UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

*(ELECTRONICALLY FILED)*

| | |
|---|---|
| VERITIV OPERATING COMPANY, | ) |
| Plaintiff, | ) Case No.: 5:21-cv-170-TBR |
| v. | ) JUDGE Thomas B. Russell |
| PHOENIX PAPER WICKLIFFE, LLC, | ) |
| Defendant. | ) |

**MOTION OF VERITIV OPERATING COMPANY
TO EXPEDITE LIMITED DISCOVERY**

Plaintiff Veritiv Operating Company ("Veritiv"), by counsel, files this motion for leave to serve and conduct limited discovery on an expedited basis (the "Motion"). In support thereof, Veritiv states:

**RELEVANT BACKGROUND**

On November 4, 2021, Veritiv filed a Verified Complaint seeking, *inter alia*, injunctive relief to stop the wrongful misappropriation of Veritiv's confidential information by Phoenix Paper Wickliffe, LLC ("Phoenix"). Contemporaneously, Veritiv filed a Motion for Injunctive Relief seeking entry of a Temporary Restraining Order and Preliminary Injunction. As the Verified Complaint and Motion for Injunctive Relief, along with supporting Declaration of Jeff Pfister indicate, Phoenix was granted access to Veritiv's confidential and proprietary information only after agreeing to maintain that information confidentially and to not use it for any purpose other than fulfilling Phoenix's obligations to Veritiv. However, Phoenix disclosed that confidential and proprietary information to one of Veritiv's largest customers – ▮▮▮▮ – in order to mandate that

1

customer transfer its business to Veritiv's direct competitor. Phoenix undertook this wrongful course of action for its own financial benefit, namely, to obtain better payment terms for itself. While Veritiv's request for injunctive relief is adequately supported by the facts known to Veritiv related to Phoenix's conduct involving ▇, the full extent of Phoenix's wrongful conduct and interference with Veritiv's other customer relationships would further support and warrant issuance of injunctive relief by the Court. As set forth below, Veritiv respectfully requests immediate limited discovery in order to prepare for the Preliminary Injunction Hearing.

## ARGUMENT

Rule 26(d) of the Federal Rules of Civil Procedure implicitly acknowledges that if approved by the Court, a party may seek discovery "from any source before the parties have conferred as required by Rule 26(f)." Fed. R. Civ. P. 26(d). This comports with the well-settled principal that "district courts have wide discretion to manage their own dockets." *Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 1999) *citing Link v. Wabash Railroad Co.,* 370 U.S. 626, 630-31 (1962) (observing that district courts are "necessarily vested" with control "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). As interpreted, Rule 26(d) permits the district court to order expedited discovery upon a showing of good cause. *Kentucky CVS Pharmacy v. McKinney,* 2013 WL 1644903 at *1 (E.D. Ky. Apr. 16, 2013). When information is necessary to support or defend against a motion for preliminary injunction hearing, and when narrowly tailored, this need constitutes "good cause" to support expedited discovery. *ARGI Fin. Grp., LLC v. Hardigg,* 2020 WL 6930451 at *1 (W.D. Ky. Sept. 10, 2020) *citing Allstate Ins. Co. v. Jewell,* 2017 WL 9728236 at *2 (W.D. Ky. Aug. 25, 2017). *See also* Fed. R. Civ. P. 26 Advisory Committee Notes (1993 amendments to subdivision (d)) (observing that expedited discovery is appropriate in cases "involving requests for a preliminary injunction").

Here, Veritiv seeks to take three depositions prior to a Hearing on its request for a Preliminary Injunction. Good cause exists to allow limited expedited discovery because the requested discovery is limited in scope to establish a sufficient record on relevant issues for a Preliminary Injunction Hearing. Specifically, Veritiv seeks to conduct three narrowly tailored depositions – a deposition of Mike Grimm, the CEO of Phoenix, a deposition of Tom Umenhofer, the sales director of Phoenix, and a FRCP 30(b)(6) representative for Phoenix.

**Deposition of Mike Grimm**

The proposed deposition scope for Mr. Grimm would be limited to the following:

(1) Mr. Grimm's knowledge of the course of conduct between Phoenix and Veritiv;

(2) Mr. Grimm's knowledge of Purchase Orders between Veritiv and Phoenix related to ▮▮▮▮.

(3) Mr. Grimm's knowledge of or involvement in communications between Phoenix and ▮▮▮▮ related to ▮▮▮▮;

(4) Mr. Grimm's knowledge of or involvement in communications between Phoenix and ▮▮▮▮ related to Veritiv;

(5) Mr. Grimm's knowledge of or involvement in communications between ▮▮▮▮ and Phoenix related to ▮▮▮▮;

(6) Mr. Grimm's knowledge of or involvement in communications between ▮▮▮▮ and Phoenix related to any other customer of Veritiv;

(7) Mr. Grimm's knowledge of or involvement in communications between ▮▮▮▮ and Phoenix related to Veritiv;

(8) Mr. Grimm's knowledge of or involvement in any agreements between ▮▮▮▮ and Phoenix related to fulfillment of ▮▮▮▮'s paper needs;

(9) Mr. Grimm's knowledge of or involvement in any agreements between ▮▮▮▮ and Phoenix related to fulfillment of any customer of Veritiv's paper needs;

(10) Mr. Grimm's knowledge of financial arrangements between ▮▮▮▮ and Phoenix;

3

(11) Mr. Grimm's knowledge of or involvement in any internal communications at Phoenix related to the October 18, 2021 communication between Tom Umenhofer and Jeff Pfister discussing ▬;

(12) Mr. Grimm's knowledge of or involvement in the October 20, 2021 communication between Mr. Grimm, Jeff Pfister and Dan Watkoske; and

(13) Mr. Grimm's knowledge of the October 22, 2021 email from Dan Watkoske to him and Tom Umenhofer (*see* Complaint, Exhibit 6).

Mr. Grimm's deposition is necessary for purposes of the Preliminary Injunction hearing because it was Mr. Grimm who made the day-to-day decisions related to Phoenix's course of conduct after he was hired in September 2021. As the CEO, Mr. Grimm is responsible for understanding Phoenix's contractual obligations with Veritiv, and for ensuring Phoenix did not breach those agreements. Upon information and belief, Mr. Grimm directed ▬ to move its business to ▬, Veritiv's competitor. Mr. Grimm is thus likely to have knowledge concerning Phoenix's role in moving ▬'s business, what information was disclosed to ▬ to effectuate that move, and what other customers of Veritiv were similarly targeted by Phoenix.

### Deposition of Tom Umenhofer

The proposed deposition scope for Mr. Umenhofer will be:

(1) Mr. Umenhofer's knowledge and understanding of Veritiv Operating Company Terms and Conditions of Purchase contained within the Vendor Packet sent to Phoenix on or about January 2, 2019 (*see* Complaint, Exhibit 2);

(2) Mr. Umenhofer's knowledge and understanding of the Supplier Code of Conduct incorporated into the Vendor Packet sent to Phoenix on or about January 2, 2019 (*see* Complaint, Exhibit 3);

(3) Mr. Umenhofer's knowledge of the course of conduct between Phoenix and Veritiv;

(4) Mr. Umenhofer's knowledge of the March 2020 presentation made by Phoenix to Veritiv's Regional Sales Leaders and Veritiv Sales Professionals;

(5) Mr. Umenhofer's knowledge of Purchase Orders between Veritiv and Phoenix related to ▬;

(6) Mr. Umenhofer's knowledge of or involvement in communications between Phoenix and ▌ related to ▌;

(7) Mr. Umenhofer's knowledge of or involvement in communications between Phoenix and ▌ related to Veritiv;

(8) Mr. Umenhofer's knowledge of or involvement in communications between ▌ and Phoenix related to ▌;

(9) His knowledge of or involvement in communications between ▌ and Phoenix related to any customer of Veritiv;

(10) Mr. Umenhofer's knowledge of or involvement in communications between ▌ and Phoenix related to Veritiv;

(11) Mr. Umenhofer's knowledge of or involvement in any agreements between ▌ and Phoenix related to fulfillment of ▌'s paper needs;

(12) Mr. Umenhofer's knowledge of or involvement in any agreements between ▌ and Phoenix related to fulfillment of any customer of Veritiv's paper needs;

(13) Mr. Umenhofer's knowledge of financial arrangements between ▌ and Phoenix;

(14) Mr. Umenhofer's knowledge the October 18, 2021 communication between him and Jeff Pfister related ▌;

(15) Mr. Umenhofer's knowledge of the October 20, 2021 communication between Michael Grimm and Jeff Pfister and Dan Watkoske; and

(16) Mr. Umenhofer's knowledge of the October 22, 2021 email from Dan Watkoske to him and Michael Grimm.

Mr. Umenhofer's deposition is necessary for purposes of the preliminary injunction hearing because it was Mr. Umenhofer who advised Veritiv's Jeff Pfister that Phoenix directed ▌ to move its business away from Veritiv to Veritiv's direct competitor. As the Sales Director, Mr. Umenhofer was also aware of the relationship between Veritiv and Phoenix, including the agreements and understandings between the two parties. Mr. Umenhofer is thus likely to have knowledge concerning Phoenix's role in diverting ▌'s business, what

information was disclosed to ▉▉▉▉ to effectuate that move, including whether it was subject to the confidentiality agreements between the parties, and what other customers of Veritiv were similarly targeted by Phoenix.

**Phoenix 30(b)(6) Deposition**

The proposed deposition scope for an FRCP 30(b)(6) corporate representative will be limited to:

(1) The Veritiv Operating Company Terms and Conditions of Purchase contained within the Vendor Packet sent to Phoenix on or about January 2, 2019, including any communications relating to those Terms and Conditions (*see* Complaint, Exhibit 2);

(2) The Supplier Code of Conduct incorporated into the Vendor Packet sent to Phoenix on or about January 2, 2019, including any communications relating to the Supplier Code of Conduct (*see* Complaint, Exhibit 3);

(3) The March 2020 presentation made by Phoenix to Veritiv's Regional Sales Leaders and Veritiv Sales Professionals and any documents that relate to the presentation (*see* Complaint, Exhibit 4);

(4) The course of conduct between Veritiv and Phoenix evidencing that Phoenix has an exclusive arrangement with Veritiv and any documents that relate to such a course of conduct;

(5) Purchase Orders between Veritiv and Phoenix related to ▉▉▉▉, including Phoenix's understanding of the confidentiality of those terms and the existence of any documents that relate to such Purchase Orders;

(6) Communications between Phoenix and ▉▉▉▉ related to ▉▉▉▉▉▉▉▉, including the existence of any documents that relate to such communications;

(7) Communications between Phoenix and ▉▉▉▉ related to Veritiv including the existence of any documents that relate to such communications;

(8) Communications between ▉▉▉▉▉▉▉▉▉▉ and Phoenix related to ▉▉▉▉ including the existence of any documents that relate to such communications;

(9) Communications between ▉▉▉▉▉▉▉▉▉▉ and Phoenix related to any customer of Veritiv including the existence of any documents that relate to such communications;

6

(10) Communications between ▮▮▮▮▮ and Phoenix related to Veritiv including the existence of any documents that relate to such communications;

(11) Any agreements between ▮▮▮▮▮ and Phoenix related to fulfillment of ▮▮▮'s paper needs including the existence of any documents that relate to such agreements;

(12) Any agreements between ▮▮▮▮▮ and Phoenix related to fulfillment of any customer of Veritiv's paper needs including the existence of any documents that relate to such agreements;

(13) Any documents or communications describing financial arrangements between ▮▮▮▮▮ and Phoenix;

(14) The October 18, 2021 communication between Tom Umenhofer and Jeff Pfister related to ▮▮▮ including the existence of any documents that relate to such communication;

(15) The October 20, 2021 communication between Michael Grimm, Jeff Pfister and Dan Watkoske including the existence of any documents that relate to such communication; and

(16) The October 22, 2021 email from Dan Watkoske to Michael Grimm and Tom Umenhofer including the existence of any documents that relate to the email.

Because of the likelihood that individuals other than Mr. Grimm and Mr. Umenhofer were involved in and have knowledge related to these issues, a corporate representative deposition is necessary in preparation for a preliminary injunction hearing to full understand Phoenix's role in moving ▮▮▮'s business, what information was disclosed to ▮▮▮ to effectuate that move, including whether it was subject to the confidentiality agreements between the parties, and what other customers of Veritiv were similarly targeted by Phoenix.

In support of this Motion, Veritiv has tendered a Proposed Notice to Take Video Deposition of Mr. Umenhofer, Mr. Grimm and an FRCP 30(b)(6) representative as Exhibits 1, 2 and 3 respectively. Veritiv seeks to conduct these depositions within seven (7) days of this order.

## CONCLUSION

For the foregoing reasons, Veritiv respectfully requests that this Court grant its Motion to allow such limited expedited discovery. A Proposed Order is tendered herewith.

Respectfully submitted,

*/s/ Elisabeth S. Gray*
Elisabeth S. Gray
Jennifer Barbour
MIDDLETON REUTLINGER
401 S. Fourth Street, Suite 2600
Louisville, KY  40202
(502) 584-1135
egray@middletonlaw.com
***Counsel for Plaintiff Veritiv Operating Company***

Dated: November 22, 2021