UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:21-CV-00170-BJB-HBB

VERITIV OPERATING COMPANY                                    PLAINTIFF

VS.

PHOENIX PAPER WICKLIFFE, LLC                                 DEFENDANT

## MEMORANDUM OPINION
## AND ORDER

Before the Court is the motion of Plaintiff Veritiv Operating Company (DN 67) to compel Defendant Phoenix Paper Wickliffe, LLC to fully respond to specific Interrogatories set forth in Veritiv's Second Set of Interrogatories,[1] to fully respond to specific Document Requests in Veritiv's Second Set and Third Set of Requests for Production of Documents,[2] and to provide two witnesses for deposition.

## FINDINGS OF FACT

### Nature of the Case

On November 22, 2021, Veritiv filed suit against Phoenix "for the willful and malicious misappropriation of trade secrets and confidential information used to divert Veritiv's customers to a direct competitor" (**SEALED** DN 8 PageID # 107). The Complaint alleged, "[a]s a result of Phoenix's breaches of confidentiality obligations owed to Veritiv, and its willful and malicious misappropriation of Veritiv's trade secrets and confidential information, Phoenix has

---

[1] Specifically, Veritiv is referring to Interrogatory Nos. 5 and 6 in its Second Set of Interrogatories.
[2] Specifically, Veritiv is referring to Document Request Nos. 1, 2, 3, 4, 7, 9, 10, 11, and 22 in its Second Set of Requests for Production and Document Request Nos. 1, 2, and 4 in its Third Set of Requests for Production.

misappropriated Veritiv's customers causing Veritiv damages which it will continue to suffer unless Phoenix is enjoined" (**SEALED** Id.).[3]  The Complaint sets forth the following claims: trade secrets misappropriation under the Defend Trade Secrets Act and Ky. Uniform Trade Secrets Act (Counts I and II); breach of contract (the Vendor Packet and Supplier Code of Conduct) through disclosure of confidential information (Count III); tortious interference with a contractual business relationship and/or expectancy (Count IV); unfair competition (Count V); breach of implied duty of good faith and fair dealing (Count VI); punitive damages (Count VII); and injunctive relief (Count VIII) (**SEALED** Id. at PageID #121-29).  Veritiv also moved the Court for a Temporary Restraining Order and Preliminary Injunction enjoining Phoenix from disclosing Veritiv's trade secrets or confidential information; inducing or influencing Veritiv's customers from doing business with Veritiv; using or attempting to disclose Veritiv's trade secrets or confidential information to any third party, or for Phoenix's own personal commercial advantage; and hiding, damaging, or destroying Veritiv's trade secrets or confidential information (**SEALED** DN 9 PageID # 205).

In a Memorandum Opinion and Order filed on December 21, 2021, Senior District Judge Thomas B. Russell, to whom the case was earlier assigned, denied Veritiv's motion for a temporary restraining order (**SEALED** DN 28 PageID # 420).  Judge Russell concluded that Veritiv had not demonstrated a strong likelihood of succeeding on the merits (**SEALED** Id.).

On March 7, 2022, Veritiv filed an Amended Complaint (**SEALED** DN 38).  It sets forth the following claims: breach of the protected accounts agreement (Count I); trade secrets misappropriation under the Defend Trade Secrets Act and Ky. Uniform Trade Secrets Act (Counts

---

[3] More specifically, the Complaint accused Phoenix of willful and malicious misappropriation of trade secrets and confidential information to divert Veritiv's customer Three Z Printing Co. to a direct competitor, Lindemeyer Munrow ("Lindemeyer") (**SEALED** DN 8 PageID # 107, 117-121).

II and III); breach of contract (the Vendor Packet and Supplier Code of Conduct) through disclosure of confidential information (Count IV); tortious interference with a contractual business relationship and/or expectancy (Count V); breach of implied duty of good faith and fair dealing (Count VI); punitive damages (Count VII); and injunctive relief (Count VIII) (**SEALED** Id. at PageID #958-67).

On March 11, 2022, Phoenix filed its Answer which responds to Veritiv's allegations and raises twenty-seven affirmative defenses (**SEALED** DN 39 Page ID # 1058-74). Additionally, Phoenix asserts a counterclaim for breach of contract, alleging that Veritiv applied a timely payment discount to its account payments to which it was not entitled (**SEALED** Id. at Page ID # 1075; **SEALED** DN 25 # 364-65).

On April 27, 2022, Judge Russell conducted the preliminary injunction hearing (DN 49). On July 1, 2022, Judge Russell issued a Memorandum Opinion and Order addressing Veritiv's motion for a preliminary injunction (DN 63). He described the nature of Veritiv's claims against Phoenix as follows:

> The plaintiff, Veritiv, describes itself as a merchant for commercial printers and large end-use companies that consume high volumes of paper. Veritiv primarily operates as a distributor, purchasing paper from mills and selling that paper to end-use customers. Veritiv provides other services, too. For example, Veritiv consults and advises its end-use customers about print jobs and manages credit risks for mills. One of the mills that Veritiv obtains its paper from, Phoenix, is the defendant in this dispute.

> The parties began discussing a relationship where Phoenix would sell uncoated white paper to Veritiv, and Veritiv would market and resell that uncoated white paper to its customers. Phoenix approached Veritiv and asked if Veritiv could become Phoenix's exclusive distributor. According to Veritiv, the terms of the offer were that if Phoenix could make 40,000–50,000 tons of uncoated paper, Veritiv would purchase that entire volume of uncoated paper from Phoenix's mill. The parties began negotiating this proposal while Phoenix produced paper for Veritiv to buy. Veritiv states that

3

sometime during this time period "[t]he first customer [it] brought to Phoenix was Three Z Printing." Eventually negotiations over the exclusive relationship broke down because Phoenix hoped to increase its production of uncoated paper to 200,000–240,000 tons, an amount that was too much for Veritiv sell. So, Veritiv and Phoenix continued their relationship without an exclusivity agreement.

The parties offer different accounts of what happened next. Veritiv claims that at some point the parties entered into a "Protected Accounts Agreement" because it "was important" to "protect the business" that Veritiv had brought to Phoenix. A Protected Account Agreement means that if a distributor introduces a mill to an end-use customer and the distributor is filling all of that customer's paper needs, then the mill will not sell to that customer directly or through a different merchant. Veritiv states that it is "general practice in the industry" to protect accounts this way, because otherwise a mill could take advantage of a distributor's sales and marketing efforts. Veritiv maintains that the only way for a customer to be removed from the Protected Accounts Agreement is if it chose not to purchase Phoenix paper from Veritiv or if there was a lack of sales. Although there was no executed written contract for the Protect Accounts Agreement, Veritiv states that "it is not common in the industry to have a written Protected Accounts Agreement because the parties are aligned, and each controls the process to the end users."

By contrast, Phoenix maintains that "[t]he parties never entered into an account-specific agreement that limit[ed] Phoenix's right to change merchant representatives or Veritiv's right to change suppliers." According to Phoenix, "[t]he parties never agreed on any list of 'protected accounts,' much less on any terms that would define what 'protected' meant." This, Phoenix alleges, aligns with the normal industry practice of documenting an account-specific exclusivity agreement in a written contract.

It's against that backdrop that Phoenix met with Three Z and asked to change distributors. Phoenix explained that it was hoping to switch distributors because Veritiv had "a very poor payment performance to Phoenix Paper and they were paying [] more than 45 days out." Veritiv asserts that it was not late in its payments, explaining that it was paying invoices by mail as Phoenix requested, and the mail system, not Veritiv, was responsible for the late payments. Without investigating whether Veritiv's payments were in fact late, Three Z asked if it could buy directly from Phoenix. Phoenix declined this proposal because it was not in a position to sell directly to customers. However, Phoenix suggested that

4

> Lindenmeyr, another distributor, replace Veritiv as the merchant representative on the account.  Three Z agreed to purchase Phoenix paper from Lindenmeyr.
>
> Phoenix subsequently informed Veritiv of its intent to change distributors.  Phoenix completed all of its outstanding purchase orders with Veritiv and then moved the Three Z account over to Lindenmeyr.

(Id. at PageID # 2272-75) (internal record citations and foot notes omitted).  In balancing the four temporary restraining order factors, especially considering Veritiv's likelihood of succeeding on the merits, Judge Russell found that a preliminary injunction against Phoenix was not appropriate (Id. at PageID # 2285).  Therefore, Judge Russell denied Veritiv's motion for a preliminary injunction (Id.).

Nature of the Discovery Dispute

The Scheduling Order was filed on January 12, 2022 (DN 32).  It established a June 1, 2022, deadline for completing all fact discovery, including depositions (Id. at PageID # 460).  An agreed order modifying the Scheduling Order was filed on June 3, 2022 (DN 59).  It modified the deadline for completing all pretrial fact discovery to August 30, 2022 (Id.).

On July 1, 2022, Veritiv propounded its second set of Interrogatories and Requests for Production to Phoenix (**SEALED** DN 67-1 PageID # 2291).  On July 29, 2022, Veritiv served its third set of Requests for Production to Phoenix (**SEALED** Id.).  On August 1, 2022, Phoenix served its responses, document production, and objections to Veritiv's second set of written discovery (**SEALED** Id.).  Additionally, on August 1, 2022, Phoenix issued a "Distribution Announcement" announcing that it would no longer be selling paper through Veritiv to any customer (**SEALED** Id.) (citing **SEALED** DN 67-2 PageID # 2316).[4]

---

[4] The single-page letter addressed to "Phoenix Paper Consumers," advised that "[e]ffective September 1, 2022, Phoenix Paper will no longer be distributing/selling its products through Veritiv Corporation.  Any orders that are currently in our system will be honored" (**SEALED** DN 67-2 PageID # 2316).  Additionally, the letter indicated that

As a result of correspondence between counsel for the parties, they engaged in a meet and confer on August 17, 2022 (**SEALED** Id.) (citing **SEALED** DN 67-4 PageID # 2323-26; **SEALED** DN 67-5 PageID # 2328-31). During which counsel discussed the deficiencies and requested supplementation of Phoenix's answers and responses to Veritiv's second set of Interrogatories and Requests for Production, the continued deposition of Tom Umenhofer, and topics that Veritiv wished to address through a Rule 30(b)(6) deposition of a Phoenix corporate representative (**SEALED** Id.).

On August 19, 2022, Veritiv deposed Lara Snowaert, a planning and scheduling manager for Phoenix (**SEALED** Id.). During Ms. Snowaert's deposition, Veritiv learned that several redacted emails which Phoenix produced on August 1, 2022, were missing attachments detailing aging invoices between Phoenix and Veritiv (**SEALED** Id. at PageID # 2291-92) (citing **SEALED** DN 67-5 PageID # 2333-37). The emails and attachments were sent and authored by Phoenix's Revenue Accountant Cory Bickett (**SEALED** Id. at PageID # 2292) (citing **SEALED** DN 67-5 PageID # 2333-37). During Ms. Snowaert's deposition, Veritiv requested that Phoenix supplement its discovery responses with those documents and Veritiv indicated it would likely seek to depose Mr. Bickett (**SEALED** Id.). On August 19, 2022, Veritiv sent an email to Phoenix confirming the request for those documents (**SEALED** Id.) (citing **SEALED** DN 67-7 PageID # 2339). On August 24, 2022, Veritiv sent an email to Phoenix confirming its request to depose Messrs. Bickett and Umnehofer on Monday, August 29, 2022 (**SEALED** Id.) (citing **SEALED** DN 67-8 PageID # 2354).

---

"[i]f this announcement impacts your company, you will need to procure alternate sourcing avenues" (Id.). Veritiv apparently received the "Distribution Announcement" from Phoenix on August 1, 2022 (**SEALED** DN 67-1 PageID # 2290-91).

On August 29, 2022, Phoenix provided its responses to Veritiv's Third Set of Requests for Production (**SEALED** Id.).  Phoenix did not produce any documents in its response, and it instead objected to each request (**SEALED** Id.).  As a result of correspondence between counsel for the parties, they engaged in a meet and confer on September 8, 2022 (**SEALED** Id.) (citing **SEALED** DN 67-9 PageID # 2365-68; **SEALED** DN 67- PageID # 2370-73).  During which counsel for the parties attempted to resolve outstanding issues related to Veritiv's Second Set of Interrogatories, Second Set of Requests for Production, and Third Set of Requests for Production (**SEALED** Id.).

Meanwhile, on August 29, 2022, and September 12, 2022, Magistrate Judge Lanny King, to whom the case was earlier referred, conducted telephonic status conferences with counsel in an attempt to resolve the above-mentioned outstanding discovery issues (DN 66).  As counsel for the parties had reached an impasse, Magistrate Judge King apparently vacated the deadlines in the Amended Scheduling Order and directed Plaintiff's counsel to file a motion to compel (Id.).

On September 23, 2022, Veritiv filed its Motion to Compel (DN 67).  Veritiv's Motion to Compel primarily focuses on issues the parties have not been able to resolve concerning Veritiv's Second Set of Interrogatories (Interrogatory Nos. 5 and 6), Second Set of Requests for Production of Documents (Document Requests Nos. 1, 2, 3, 4, 7, 9, 10, 11, and 22), and Third Set of Requests for Production of Documents (Document Request Nos. 1, 2, and 4) (**SEALED** DN 67-1 PageID # 2292-93; 2295-98, 2302, 2305-07, 2309-10; **SEALED** DN 67-12 PageID # 2376-80).  This written discovery concerns four discrete categories of documents: (1) financial records of Phoenix;[5] (2) past due payments;[6] (3) communications regarding protected accounts;[7] and (4)

---

[5] Veritiv's Second Set of Interrogatories (Interrogatory Nos. 5 and 6) and its Third Set of Requests for Production (Document Request Nos. 1, 2, and 4) seek financial records of Phoenix (**SEALED** DN 67-1 PageID # 2295-98).
[6] Veritiv's Second Set of Requests for Production (Document Request No. 7) seek past due payments material (**SEALED** Id. at PageID # 2302).
[7] Veritiv's Second Set of Requests for Production (Document Request Nos. 1, 2, 3, 4, 10, and 11) seek communications regarding protected accounts (**SEALED** Id. at PageID # 2305-07).

payment history of Lindenmeyer and other merchants[8] (**SEALED** Id.).   Veritiv's Motion to

Compel also addresses taking the depositions of Tom Umenhofer and Cory Bickett.

On October 14, 2023, Phoenix filed its response which largely challenges the relevancy of

Veritiv's written discovery concerning these four discrete categories of documents (**SEALED** 70

PageID # 2389-2402).   Phoenix also contends the Court should deny Veritiv's demand to re-depose

Mr. Umenhofer and depose Mr. Bickett (**SEALED** Id. at PageID # 2402-06).   Further, Phoenix

urges the Court not to re-open fact discovery (**SEALED** Id. at PageID # 2387-89).

On October 24, 2022, Veritiv filed its reply which answers Phoenix's challenges to the

relevance of Veritiv's written discovery addressing the four discrete categories of documents

(**SEALED** DN 2556-66).   Veritiv also replies to Phoenix's contentions that Veritiv should not be

permitted to re-depose Mr. Umenhofer and depose Mr. Bickett (**SEALED** Id. at PageID

# 2566-67).    Further, Veritiv suggests that Phoenix's argument concerning a reopening of

discovery is premature (**SEALED** Id. at PageID # 2568-69).

## CONCLUSIONS OF LAW

I.    Financial Records of Phoenix

A.    Arguments of the Parties

Veritiv explains that the requested financial records are relevant to claims and damages

sought in the case (**SEALED** DN 67-1 PageID # 2298-99).   For example, the requested profit and

loss statements and financial statements should corroborate testimony from Stephen Moreau, Jeff

Pfister, Dan Watkoske, and James Devens concerning the initiation of the Veritiv-Phoenix

relationship (**SEALED** Id.).   Veritiv contends that the requested material will allow it to chart the

business which it brought to Phoenix as the mill began to ramp-up production and why Veritiv

---

[8] Veritiv's Second Set of Requests for Production (Document Request Nos. 9 and 22) seek material concerning the payment history of Lindenmeyr and other merchants (**SEALED** Id. at PageID # 2309-10).

would insist on protection of its accounts or exclusivity after assisting Phoenix (**SEALED** <u>Id.</u>). Veritiv also claims that the documentation will demonstrate how Phoenix was able to increase its revenues by transitioning Veritiv's protected accounts to other distributors who paid more for Phoenix's paper (**SEALED** <u>Id.</u>).

Veritiv states that its expert witness intends to utilize Phoenix's actual gross and net profits associated with Veritiv's identified protected accounts to validate his projections of Veritiv's lost profits (**SEALED** <u>Id.</u> at PageID # 2299-2302). Veritiv further claims that Phoenix reduced its allocation of paper to Veritiv's customers to sow dissatisfaction between Veritiv and those customers, and the financial information is relevant to its claim for tortious interference with those business relations (**SEALED** <u>Id.</u>). Veritiv asserts that the records are relevant to its claim for punitive damages and speak to Phoenix's financial worth and ability to bear a sanction (**SEALED** <u>Id.</u>). Veritiv suggests that its proposed modifications to the discovery requests for financial records of Phoenix have limited the scope to a narrow relevant timeframe and are not disproportional to the needs of the case (**SEALED** <u>Id.</u>).

Phoenix contends that Veritiv has failed to articulate any legitimate reason for its demand that Phoenix provide extensive financial records and information relating to its revenues, costs, and profits (**SEALED** DN 70 PageID # 2389-90). Phoenix asserts that its profits are not discoverable to corroborate the deposition testimony of Messrs. Moreau, Pfister, Watkoske, and Devens concerning the initiation of the Veritiv-Phoenix relationship or to demonstrate Phoenix's motive for its breaching the Protected Accounts Agreement as this information is not relevant to a claim for breach of contract (**SEALED** <u>Id.</u>) (citing <u>United Propane Gas v. Pincelli & Assocs.</u>, No. 5:13-CV-00190, 2016 U.S. Dist. LEXIS 199769, at *21-23 (W.D. Ky. Dec. 29, 2016) (holding motive not material to breach of contract determination or damages)). Phoenix asserts that

Veritiv's cited case law does not support its position that Phoenix's gross and net revenues, costs, and profits are relevant to Veritiv's damages calculation because Phoenix is not a merchant representative who competes with Veritiv (**SEALED** Id. at PageID # 2390-93).  Further, Veritiv has not provided an affidavit from its expert explaining how this requested information is helpful in his calculation of Veritiv's projected lost profits (**SEALED** Id.).  Phoenix suggests that Veritiv is already in possession of all the information it needs to calculate its purported lost profits when Phoenix moved Three Z and any other accounts to another merchant representative (**SEALED** Id.).  Phoenix argues "[t]he best and only non-speculative evidence of Veritiv's lost profits is based on its own historical sales data, representing the sales that Veritiv was actually able to achieve as Phoenix's merchant representative" (**SEALED** Id. at PageID # 2393).  Next, Phoenix claims that financial records reflecting its allocation of paper to various merchants/customers are not relevant to any existing claim or defense in this action (**SEALED** Id. at PageID # 2393-94).  Finally, Phoenix contends that the type or categories of financial records which Veritiv seeks to compel are not relevant or germane to the issue of punitive damages, and that Veritiv's stand-alone claim for punitive damages is not cognizable because punitive damages are a remedy not an independent cause of action (**SEALED** Id. at PageID # 2394-95).

In reply, Veritiv argues the profit and loss statements coupled with other requested data about merchants selling Phoenix's paper are relevant because they "will demonstrate how significantly Phoenix relied upon its relationship with Veritiv to start its mill (and how little other merchants played in that role) to demonstrate why Veritiv would insist on protection of its accounts" (**SEALED** DN 74 PageID # 2557).  Veritiv explains that discovery of the profit and loss statements and audited and unaudited financial statements is relevant to establishing Phoenix's improper motive in this case which is relevant to Veritiv's breach of contract and tortious

interference claims (**SEALED** <u>Id.</u>). Veritiv indicates that its request for gross and net revenues and profits is relevant to calculating its damages because Veritiv's expert will be projecting Veritiv's lost profits from its top accounts sold through Phoenix, assuming Phoenix had not breached the protected accounts agreement and sold those accounts through Veritiv's competitors (**SEALED** <u>Id.</u>).[9] Veritiv points out that Phoenix conflates relevancy for discovery purposes with an argument concerning the weight and admissibility of an expert's opinion (**SEALED** <u>Id.</u> at PageID # 2558). Veritiv asserts that the requested documents address whether Phoenix's allocation of paper disfavored Veritiv and its customers which is relevant to Veritiv's claims for breach of the protected account agreement, breach of implied duty of good faith and fair dealing, and tortious interference with contractual relationship between Veritiv and its customers (**SEALED** <u>Id.</u> at PageID # 2559-60). Veritiv relies on <u>Corizon Health, Inc. v. CorrecTek, Inc.</u>, No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390 (W.D. Ky. Dec. 12, 2017), to argue Phoenix should not be allowed to use a discovery dispute to challenge the viability of Veritiv's punitive damage claim (<u>Id.</u> at PageID # 2560-61).

B.   Applicable Law

Veritiv, as the party moving to compel, bears the initial burden of demonstrating relevance of the information or materials requested. *See* <u>Brewer v. All. Coal, LLC</u>, No. 7:20-CV-00041-DLB-EBA, 2022 WL 5199868, at *2 (E.D. Ky. Oct. 5, 2022); <u>Burrell v. Duhon</u>, No. 5:18-CV-00141-TBR-LLK, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019). Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged

---

[9] Because Phoenix terminated its relationship with Veritiv on August 1, 2022, Veritiv has no way of determining the cost of purchasing paper from Phoenix after that date (**SEALED** DN 74 PageID # 2557-58). Veritiv explains in order for its expert to project Veritiv's damages into the future, Veritiv needs access to Phoenix's gross and net revenues to identify Phoenix's cost and payment terms charged to merchants (**SEALED** <u>Id.</u> at PageID # 2558). Veritiv's expert must also know the sales for those customers after Phoenix breached the protected accounts agreement – whether sales increased or decreased (**SEALED** <u>Id.</u>).

matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.[10]   Additionally, the Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

"Relevance is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)).   Additionally, a "variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action." Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.   For example, "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Fed. Rule Civ. P. 26(b)(1) advisory committee's note to 2000 amendment. Thus, the spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one.  *See* John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008).   Further, the Court has wide discretion in deciding whether information might be relevant. *See* Albitton, 2016 WL 3580790, at *3.

If the moving party satisfies the initial burden of demonstrating relevance of the information or materials requested, the burden shifts to the nonmoving party to show that

---

[10] In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

production of the information or materials would be unduly burdensome.  *See* Delta T, LLC v. Williams, 337 F.R.D. 395, 398 (S.D. Ohio 2021).  But mere statements that the discovery requests are burdensome is not adequate to voice a successful objection.  *See* Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC, 277 F.R.D. 348, 360 (W.D. Ky. 2011).  The nonmoving party must demonstrate specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.  *See* Id.; Waskul v. Washtenaw Cnty. Cmty. Mental Health, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021); Cratty v. City of Wyandotte, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017).

    C.    Discussion

    At issue are Veritiv's Second Set of Interrogatories (Interrogatory Nos. 5 and 6) and its Third Set of Requests for Production (Document Request Nos. 1, 2, and 4), both of which seek financial records of Phoenix (**SEALED** DN 67-1 PageID # 2295-98).  During the parties' meet and confer conference, Veritiv proposed modifications to these written discovery requests, which Phoenix has not accepted (**SEALED** DN 67-1 PageID # 2295-98).  The proposed modifications to these written discovery requests are incorporated in Veritiv's argument and proposed order (**SEALED** DN 67-1 PageID # 2295-98; **SEALED** DN 67-12).  Specifically, Veritiv's proposed modifications are: (1) limit Interrogatory No. 5 to identifying all revenues and costs associated with 17 specific accounts from November 1, 2019 to present;[11] (2) limit Interrogatory No. 6 to identifying sales associated with the same 17 accounts sales from November 1, 2019 to present; (3) limit Document Request No. 1 to producing annual profit and loss statements and audited and

---

[11] The 17 accounts are: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope (**SEALED** DN 67-1 PageID # 2295-96; **SEALED** DN 67-12 PageID # 2376-77).

unaudited financial statements for 2020-2022; (4) limit Document Request No. 2 to producing documents showing gross and net revenues for 2020-2022 derived from 22 specific accounts;[12] (5) limit Document Request No. 4 to producing documents showing cash flow for 2020-2022 derived from the same 22 accounts (**SEALED** DN 67-1 PageID # 2295-98; **SEALED** DN 67-12 PageID # 2376-78). However, Veritiv's reply states, "Veritiv has requested production of the following financial documents from Phoenix: 1) documents showing gross and net revenues, including costs, associated with top 22 accounts sold by Veritiv; 2) sales associated with top 22 accounts sold by Veritiv; 3) annual profit and loss statements for 2020-2022; 4) audited and unaudited financial statements for 2020-2022; 5) documents showing cash flow for 2020-2022 from the top 22 accounts sold through Veritiv" (**SEALED** DN 74 PageID 2556 n.1).

In a text order issued on March 30, 2023, the undersigned scheduled a telephonic conference for April 12, 2023, with counsel for the parties to seek clarification of the above-mentioned information set forth in Veritiv's initial memorandum, proposed order, and reply memorandum (DN 78). An email, dated April 4, 2023, provided counsel for the parties with some additional guidance so they might be better prepared for the telephonic conference.

Prior to the telephonic conference on the morning of April 12, 2023, counsel for Veritiv filed an updated proposed order (**SEALED** DN 79) and sent an email to opposing counsel and the undersigned. In the email, counsel for Veritiv indicated that the updated proposed order sets forth a consistent client list of 17 customers that applies to Interrogatory Nos. 5 and 6 and Request Nos. 2 and 4. Veritiv's counsel explained that the earlier above-mentioned lists of 17 and 22 customers

---

[12] The 22 accounts are: Motivating Graphics; Rainbow Manufacturing; Three Z; Navistar Direct Marketing; Bradley Graphic Solutions; Paul S. Amidon and Associates; SGDL Intermediate, Inc.; Specialty Promotions; MDI Imaging & Mail; ALLIED Envelope; Seachange Printing and Marketing; National Mail Graphics; Sandy Alexander; Consolidated Mailing Services; MAR Graphics; Image Direct Group; Graphic Publishing; McClung Printing; Print Management Group; Diamond Graphics; Breese Publishing; and McAdams Group (**SEALED** DN 67-1 PageID # 2296-98; **SEALED** DN 67-12 PageID # 2377-78).

were derived using different criteria, but Veritiv now believes that it makes more sense to have a single consistent list of 17 protected accounts for which Veritiv seeks discovery.  During the telephonic conference on April 12, 2023, the parties did not have any additional information concerning this matter.  Therefore, in the context of addressing the discovery dispute concerning Interrogatory Nos. 5 and 6 and Request Nos. 2 and 4, the undersigned will rely on the consistent client list of 17 customers identified in Veritiv's updated proposed order (**SEALED** DN 79 PageID # 2619-21).[13]

In an effort to demonstrate that the above requested financial records are relevant to the claims asserted and damages sought in this case, Veritiv makes several arguments.

1.      Request No. 1

As mentioned above, Veritiv claims the profit and loss statements and financial statements—sought through Request for Production No. 1—will: (1) corroborate witness testimony concerning the initiation of the Veritiv-Phoenix relationship; (2) demonstrate Veritiv's important role in the development and growth of Phoenix's paper sales and why Veritiv would insist on protection of its accounts or exclusivity; and (4) Phoenix's motive for breaching the protected accounts agreement (**SEALED** DN 67-1 PageID # 2298-99).  Phoenix responds that its financial records are not discoverable to corroborate witness testimony regarding the parties' relationship or to demonstrate Phoenix's motive for its alleged breach of the alleged protected accounts agreement (**SEALED** DN 70 PageID # 2389-90).  In reply, Veritiv explains it needs the requested financial data to: (1) corroborate the witness testimony because Phoenix disputes the

---

[13] Veritiv's consistent client list identifies the following 17 customers: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope (**SEALED** DN 79 PageID # 2619).

accuracy of their testimony; and (2) establish Phoenix's improper motive which is relevant to Veritiv's tortious interference with a contractual business relationship and/or expectancy claim (Count V) (**SEALED** DN 74 PageID # 2556-57).

The Court concludes that Phoenix's profit and loss statements and financial statements are not discoverable for the purpose of demonstrating Phoenix's motive for its purported breach of the protected accounts agreement (Count I). *See* United Propane Gas, Inc. v. Pincelli & Associates, Inc., No. 5:13-CV-190-TBR-LLK, 2016 WL 9583871, at *8 (W.D. Ky. Dec. 29, 2016), objections sustained on other grounds, 2017 WL 3880773, at *1-4 (W.D. Ky. Sept. 5, 2017).  A party's state of mind or motive is not material when determining if a contract was breached or determining the amount of damages.  Advanced Accessory Sys., LLC v. Gibbs, 71 Fed. App'x. 454, 466 (6th Cir. 2003) (citation omitted).  However, such materials are discoverable to establish Phoenix's motive for its alleged tortious interference with a contractual business relationship and/or expectancy (Count V) and the amount of damages.  *See* House v. Player's Dugout, 440 F. Supp. 3d 673, 691 (W.D. Ky. 2020) (noting that improper motive is an element of a tortious interference claim). Additionally, as Phoenix disputes the accuracy of testimony from Veritiv's witness concerning the development of the relationship between Veritiv and Phoenix, such materials would be discoverable for the purpose of corroborating their testimony and impeaching or rebutting evidence that Phoenix presents.  For the above reasons, the Court concludes that Veritiv has sustained its burden of demonstrating the relevance of the annual profit and loss statements and the audited and unaudited financial statements for 2020-2022 which Veritiv has sought through Request for Production No. 1, as revised by Veritiv's proposed modifications.  Additionally, Phoenix has not shown that production of the information would be unduly burdensome.

**WHEREFORE,** Veritiv's motion is **GRANTED** to the extent it seeks to compel Phoenix to supplement its response to **Request No. 1 of Veritiv's Third Set of Requests for Production**, as revised by Veritiv's proposed modifications.  **Within 45 days of entry of this Order**, Phoenix shall produce its profit and loss statements and the audited and unaudited financial statements for 2020-2022.

2.      Request No. 2

Veritiv also claims that Phoenix's gross and net profits associated with its paper sales to the 22 specifically identified accounts—sought through Request for Production No. 2—are relevant because: (1) Veritiv's expert witness intends to utilize this information to verify his projections of Veritiv's lost profits associated with accounts lost as a result of Phoenix breaching the protected accounts agreement (Count I); and (2) the financial records would show whether Phoenix reduced allocation of paper to Veritiv's customers to create dissatisfaction between Veritiv and those customers which is relevant to Veritiv's claim that Phoenix tortiously interfered with a contractual business relationship and/or expectancy by diverting the customers to another merchant (Count V) (**SEALED** Id. at PageID # 2299-2301) (citing TruGreen Cos., LLC v. Mower Brothers, Inc., 199 P.3d 929, 933 (Utah 2008) (plaintiff may use defendant's profits as evidence in validating its lost profits); Corizon Health, Inc. v. CorrecTek, Inc., No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390, at *3 (W.D. Ky. Dec. 12, 2017) (defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of the punitive damage award)).  In response, Phoenix claims: (1) its gross and net profits associated with Three Z and the other accounts that it moved to another merchant are not relevant to Veritiv's damage calculation;[14] and (2) Veritiv is

---

[14] More specifically Phoenix argues: (1) Veritiv has not provided an affidavit from its expert indicating Phoenix's gross and net revenues are relevant to verify his projections of Veritiv's lost profits; (2) as Phoenix is a manufacturer of paper, its gross and net revenues are not relevant to the damages calculations of Veritiv which acts as a middleman, purchasing paper from Phoenix and re-selling it at marked-up prices; and (3) "[e]ven assuming that Phoenix succeeded

already in possession of all the information it needs to calculate its lost profits when Phoenix moved Three Z and other accounts to another merchant (**SEALED** DN 70 PageID # 2390-93).   In reply, Veritiv explains why Phoenix's gross and net revenues derived from specific former accounts of Veritiv are relevant to: (1) calculating Veritiv's future damages after August 1, 2022;[15] and (2) determining the extent to which Phoenix disfavored Veritiv and its customers in the allocation of paper as this information supports Veritiv's claims of breach of the protected accounts agreement (Count I), breach of implied duty of good faith and fair dealing (Count VI), and tortious interference with the contractual relationship between Veritiv and its customers (Count V) (**SEALED** DN 74 PageID # 2557-60).

The Court will begin with the observation that Phoenix's position conflates relevancy for discovery purposes with a challenge to the weight and admissibility of the lost profit calculations/projections of Veritiv's expert.  *See* AWP, Inc. v. Safe Zone Servs., LLC, No. 3:19-CV-00734-CRS, 2022 WL 989133, at *5 n.7 (W.D. Ky. Mar. 31, 2022) (challenge to how plaintiff's expert calculated the alleged lost profits is an admissibility issue raised in defendants' motion to exclude the expert's disclosure and testimony).  The general rule is that the lost profits being claimed must not be remote, uncertain, or speculative.  *See* Clinch Valley Printing Co. v. Int'l Hot Rod Ass'n, 4 F. App'x 303, 305 (6th Cir. 2001).  Certainly, evidence of prior profits provides a reasonable basis for the computation of future profits.  *See* E. Ky. Lumber & Dev. Co.

---

in increasing its pricing or sales volume to Three Z or any other account after it stopped selling through Veritiv, Veritiv has no basis to assert that the increases would have been the same if Phoenix had continue to sell through Veritiv" (**SEALED** DN 70 PageID # 2390-93) (citing Vanderbilt Univ. v. Scholastic, Inc., No. 3:18-cv-00046, 2019 WL 9904449, at *9-10 (M.D. Tenn. Nov. 27, 2019) (where plaintiff's contract damages consisted of royalties calculated as a percentage of defendant's net sales, financial records other than those showing net sales were irrelevant and not discoverable)).

[15] Veritiv indicates while its historical sales with the customers is helpful and informative to the lost profit analysis, in order for its expert to project Veritiv's damages into the future—after Phoenix terminated its relationship with Veritiv on August 1, 2022—Veritiv must have access to Phoenix's gross and net revenues to identify Phoenix's costs and payment terms charged to merchants as well as sales to Veritiv's former accounts to determine whether sales increased or decreased (**SEALED** DN 74 PageID # 2557-58).

v. Waddell, 239 S.W.2d 68, 71 (Ky. 1951).  But to ensure that lost profits are demonstrated with reasonable certainty, they must be substantiated by calculations that are based on facts available or in evidence.  *See* Matco Tools Corp. v. Urquhart, 435 F. Supp. 3d 802, 813 (N.D. Ohio 2020).

Here, Veritiv acknowledges that its historical sales to the 17 customers is helpful and informative to the lost profit analysis.  Veritiv explains, however, for its expert to project Veritiv's damages into the future—after Phoenix terminated its relationship with Veritiv on August 1, 2022—Veritiv must have access to Phoenix's gross and net revenues to identify Phoenix's costs and payment terms charged to merchants as well as sales to Veritiv's former accounts to determine whether sales increased or decreased.  Without this information, the calculation of lost profits beginning August 1, 2022, and going forward could be considered speculative because it will not be substantiated based on facts available or in evidence.  Additionally, Veritiv has more than adequately explained why Phoenix's gross and net revenues derived from the 17 specific former accounts of Veritiv are relevant to determining the extent to which Phoenix disfavored Veritiv and its customers in the allocation of paper which supports Veritiv's claims of breach of the protected accounts agreement (Count I), breach of implied duty of good faith and fair dealing (Count VI), and tortious interference with the contractual relationship between Veritiv and its customers (Count V).  For the above reasons, the Court concludes that Veritiv has sustained its burden of demonstrating the relevance of Phoenix's gross and net revenues for 2020-2022 derived from Phoenix's paper sales to the 17 specifically identified accounts which Veritiv has sought through Request for Production No. 2, as revised by Veritiv's proposed modifications.  Additionally, Phoenix has not shown that production of the information would be unduly burdensome.

**WHEREFORE**, Veritiv's motion is **GRANTED** to the extent it seeks to compel Phoenix to supplement its response to **Request No. 2 of Veritiv's Third Set of Requests for Production**,

as revised by Veritiv's proposed modifications. **Within 45 days of entry of this Order**, Phoenix shall produce documents showing gross and net revenues for 2020-2022 derived from its paper sales to the following 17 accounts: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope.

### 3.   Financial Records for Punitive Damage Claim

Next, Veritiv argues that Phoenix's financial records are relevant to Veritiv's claim for punitive damages because a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of a punitive damage award (Count VII) (**SEALED** PageID # 2301) (citing Corizon Health, Inc. v. CorrecTek, Inc., No. 5:17-CV-35-TBR-LLK, 2017 WL 7693390, at *3 (W.D. Ky. Dec. 12, 2017)).   In response, Phoenix suggests that Veritiv is not pursuing Phoenix's financial records for the purpose of evaluating Veritiv's claim for punitive damages because Veritiv is demanding production of the categories of financial records that are not discoverable in connection with a claim for punitive damages (**SEALED** DN 70 PageID # 2394-95) (citing Corizon Health, Inc., 2017 WL 7693390, at *14).   In reply, Veritiv asserts that Corizon Health, Inc. supports the discoverability of the very records that Veritiv seeks in this case as the records will provide the needed information to show Phoenix's overall net worth and the harm Veritiv suffered from Phoenix's actions (**SEALED** DN 74 PageID # 2560-61) (citing 2017 WL 7693390, at *4).

The Court notes that under federal law evidence of a tortfeasor's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should

be awarded.  *See* <u>Corizon Health, Inc.</u>, 2017 WL 7693390, at *3 (citing <u>City of Newport v. Fact</u>

<u>Concerts, Inc.</u>, 453 U.S. 247, 270 (1981)).  Further, the majority of federal courts have concluded

that a plaintiff seeking punitive damages is entitled to discover information relating to the

tortfeasor's financial condition in advance of trial without having to make a *prima facie* showing

that plaintiff is entitled to recover punitive damages.  *See* <u>Id.</u>

Here, as Veritiv has made a direct claim for punitive damages in Count VII of its Amended

Complaint and Phoenix has not moved to dismiss that claim but instead has answered the Amended

Complaint, the Court declines Phoenix's invitation to comment on the sufficiency of Veritiv's

pleadings or whether the punitive damage claim will survive a dispositive motion.  *See* <u>Id.</u>  Thus,

Veritiv is entitled to discover information relating to Phoenix's financial condition and net worth.

For the above reasons, the Court concludes that Veritiv has sustained its burden of demonstrating

the information and records that Veritiv seeks from Phoenix—through Interrogatory Nos. 5 and 6

of the Second Set of Interrogatories and Document Request Nos. 1, 2, and 4 of the Third Set of

Requests for Production, as revised by Veritiv's proposed modifications—are discoverable to

determine Phoenix's financial condition and net worth as well as allow Veritiv to develop its claim

for punitive damages.  *See* <u>Id.</u> at *4.

The temporal scope of such discovery should be limited in an effort to provide a picture of

the current financial condition and net worth of Phoenix.  <u>Id.</u> at *4-5.  Except for Interrogatories 5

and 6 which seek information from November 1, 2019 to the present, Veritiv has reasonably

proposed limiting the temporal scope of its written discovery to the time frame 2020 through 2022

(**SEALED** DN 67-1 PageID # 2295-98; **SEALED** DN 67-12 PageID # 2376-78).  Phoenix did not

make a temporal scope suggestion (**SEALED** DN 70 PageID # 2394-95).  The district court in

<u>Corizon Health, Inc.</u>, noted that most courts addressing the temporal scope have usually limited

such discovery to the most recent year or two.  Id. at *4 (survey of cases).  The Court concludes that limiting the temporal scope of the discovery of Phoenix's financial records to 2020 through 2022 would provide Veritiv with a picture of Phoenix's current financial condition and net worth, enabling Veritiv to develop a claim for punitive damages.  For the above reasons, in responding to Veritiv's written discovery, Phoenix shall limit the temporal scope of its production of financial information and documents to 2020 through 2022 when it responds to Interrogatory Nos. 5 and 6 in Veritiv's Second Set of Interrogatories and Document Request Nos. 1, 2, and 4 in Veritiv's Third Set of Requests for Production, as revised by Veritiv's proposed modifications which are discussed above.

**WHEREFORE**, Veritiv's motion is **GRANTED** to the extent that the scope of Phoenix's production of financial information and documents in response to **Interrogatory Nos. 5 and 6 of Veritiv's Second Set of Interrogatories** and **Request Nos. 1, 2, and 4 of Veritiv's Third Set of Requests for Production** is limited to the time frame 2020 through 2022, and Phoenix's production of financial documents in response to Request Nos. 2 and 4 is also limited to the aforementioned 17 specifically identified accounts.  **Within 45 days of entry of this Order**, Phoenix shall produce the financial information and documents.

II.    Documents of Past Due Payments

A.    Arguments of the Parties

Veritiv points out that it requested and Phoenix, without raising any objection, agreed to provide documents related to any past due or late payments from Veritiv to Phoenix (**SEALED** DN 67-1 PageID # 2302-04).  However, Veritiv asserts that Phoenix's production is deficient in two aspects (**SEALED** Id.).  First, Veritiv claims that Phoenix produced a series of email communications all largely sent by Cory Bickett, a Revenue Accountant for Phoenix, that Phoenix

heavily redacted on the grounds of relevancy despite not raising an objection to the discovery request (**SEALED** <u>Id.</u>).  Second, Veritiv claims that several of the emails indicate they were sent with attachments and that Phoenix failed to indicate that it withheld the attachments in its response to the discovery request (**SEALED** <u>Id.</u>).  Veritiv seeks unredacted copies of the emails and the attachments (**SEALED** <u>Id.</u>).  Veritiv points out that Phoenix waived its objections by failing to raise them in response to the discovery request, and Phoenix cannot unilaterally redact information from a responsive document based on its own relevance determination (**SEALED** <u>Id.</u>) (citing <u>Duracore Pty Ltd. v. Applied Concrete Tech., Inc.</u>, No. 5:13-CV-184-TBR-LLK, 2015 WL 4750936, at *6 (W.D. Ky. Aug. 11, 2015); <u>Carr v. Lake Cumberland Reg'l Hosp.</u>, 6:15-cv-138-DLB-HAI, 2018 WL 11422437, at *1 (E.D. Ky. Feb. 2, 2018)).

In response, Phoenix argues that it has already produced all documents in its possession that it identified as being responsive to Document Request No. 7 (**SEALED** DN 70 PageID # 2395-96.  Phoenix defends its redaction of information from the emails and its non-production of some of the aging accounts receivable spreadsheets on the grounds that the information relates to customers other than Veritiv and is therefore not responsive to Document Request No. 7 (**SEALED** <u>Id.</u>).[16]  Phoenix indicates it is generating an updated accounts receivable aging report specific to Veritiv, which will detail all past due or late payments owed by Veritiv on a transaction-by-transaction basis and will be provided to Veritiv once it is created (**SEALED** <u>Id.</u>).  Phoenix points out that the Court recently declined to compel production of unredacted copies of documents where the redacted information was irrelevant to the responding party's damages calculation (**SEALED** <u>Id.</u>) (citing <u>Phoenix Process Equip. Co. v. Cap. Equip. & Trading Corp.</u>, No. 3:16-CV-00024-CHB, 2021 WL 1062553, at *25 (W.D. Ky. Mar. 19, 2021)).

---

[16] Phoenix contends that "Request No. 7 does not demand production of documents relating to payments owed to Phoenix by anyone other than Veritiv" (**SEALED** DN 70 PageID # 2396).

In reply, Veritiv reiterates that when Phoenix responded to Request No. 7, it failed to object and failed to indicate any documents were withheld, yet when Phoenix produced the emails discussing past due payments it did so without providing the excel spreadsheets—detailing aging accounts receivables—that the emails explicitly indicated were attached (**SEALED** DN 74 PageID # 2561-62).  Veritiv asserts that Phoenix cannot credibly claim that it has not withheld the attachments which are responsive to Request No. 7 (**SEALED** Id. at PageID # 2562).

B.      Discussion

Phoenix's written response to Veritiv's Request No. 7, in its entirety reads "Phoenix will produce responsive documents" (**SEALED** DN 70-1 PageID # 2478, Declaration Emily G. Montion, Exhibit L).[17]  Thus, Phoenix did not assert a relevance objection in its written response to Request No. 7 (**SEALED** Id.).  Yet Phoenix redacted substantial information from each email it produced and did not produce the accounts receivable aging spreadsheets that were attached to some of the emails because Phoenix unilaterally determined that the emails and the accounts receivable spreadsheets contained irrelevant or nonresponsive information.

Veritiv's motion seeks to compel Phoenix to produce the emails without redactions and with the accounts receivable spreadsheets that were withheld.  Phoenix's objection is easily disposed of because it has been waived.  Rule 34 requires that all responses to requests for production of documents "either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons."  Fed. R. Civ. P. 34(b)(2)(B).  Objections not raised in a timely response to a request for production

---

[17] Request No. 7 of Veritiv's Second Set of Requests for Production reads as follows:

> **REQUEST NO. 7:**  Produce all internal communications or documents relating to any past due or late payments owing from Veritiv to Phoenix, including but not limited to those described on page 289-290 of the Preliminary Injunction Hearing Transcript [DN 53] and paragraphs 58 and 59 of Phoenix's Proposed Findings of Fact and Conclusions of Law [DN 60].

(**SEALED** DN 70-1 PageID # 2478, Montion Decl. Ex. L).

of documents are waived.  Carr, 2018 WL 11422437, at *1; Duracore Pty Ltd., 2015 WL 4750936, at *6.  As Phoenix did not raise this relevance/responsiveness objection in its written response to Request No. 7, the objection has been waived.

The Court's understanding of the posture of this discovery dispute is: (1) the redacted emails produced by Phoenix are all of the emails responsive to Request No. 7; (2) each email produced contains some relevant and responsive information that was not redacted; (3) Phoenix redacted from each email all information that it unilaterally deemed irrelevant and nonresponsive; (4) Phoenix did not produce the accounts receivable spreadsheets attached to the emails despite their containing some relevant and responsive information; and (5) Veritiv's motion seeks production of the emails without the redactions and with the accounts receivable spreadsheets attached.  The Rules do not expressly authorize a party to redact information from or withhold an otherwise responsive document except when it contains privileged information.  *See* Carr, 2018 WL 11422437, at *2.

More importantly, the Court rejects the proposition that Phoenix may redact information from or withhold responsive documents based on a unilateral relevancy/responsiveness determination.  This Court acknowledges that recently another court within the Western District of Kentucky declined to order the production of unredacted copies of documents when the moving parties failed to demonstrate the redacted information was relevant to the claims and defenses in the case.  *See* Phoenix Process Equip. Co., 2021 WL 1062553, at *25.  The circumstances here are distinguishable because Phoenix has waived it relevance/responsiveness objection by failing to raise it in the written response to Request No. 7.

In Carr, the district court adopted an approach taken by various courts that it viewed as constituting the weight of authority.  2018 WL 11422437, at *2.  Specifically, it noted that

"[n]umerous cases support the proposition that unilateral redaction by a producing party on the basis of relevance is not permitted." Id.[18]  Additionally, numerous courts have held a party may not withhold a document after unilaterally deciding it contains irrelevant information.[19]

As an alternative to producing the spreadsheets attached to some of the emails, Phoenix announced that it will generate an updated accounts receivable aging report specific to Veritiv. The report will detail all past due or late payments owed by Veritiv on a transaction-by-transaction basis and will be provided to Veritiv once it is created.  Essentially, generating an updated accounts receivable aging report is yet another effort by Phoenix to withhold information set forth in the original reports based on its own unilateral relevance/responsiveness determination. Notwithstanding the fact that Phoenix has waived its relevancy/responsiveness objection, the case law indicates Phoenix is not permitted to do so.

---

[18] Carr v. Lake Cumberland Reg'l Hosp., 6:15-cv-138-DLB-HAI, 2018 WL 11422437, at *2 (E.D. Ky. Feb. 2, 2018) (citing Engage Healthcare Comms., LLC v. Intellisphere, LLC, No. 12-cv-787(FLW)(LHG), 2017 WL 3624262, at *4 (D.N.J. Apr. 26, 2017) ("Nothing in [Rule 34] either expressly or impliedly authorizes a party to unilaterally redact documents. If anything, the Rule contemplates that a party cannot do so."); Osborn v. Griffin, No. 11-89-WOB-CJS, 2013 WL 12176851, at *8 (E.D. Ky. July 17, 2013) (comparing Rule 45 to Rule 34 and holding that interested nonparties may not unilaterally redact nonprivileged documents); Graff v. Haverhill N. Coke Co., No. 1:09-CV-670, 2011 WL 13078603, at *7 (S.D. Ohio Aug. 8, 2011). ("Implicit in the text of the rule is a right to inspect the entire document as parties are required to 'produce documents as they are kept in the usual course of business.'"); ArcelorMittal Cleveland, Inc., v. Jewell Coke Co., No. 1:10-CV-00362, 2010 WL 5230862, at *1 (S.D. Ohio Dec. 16, 2010) ("The Court sees no compelling reason for Jewell to not disclose information solely on the grounds that Jewell thinks the non-disclosed materials are not relevant or responsive where that information appears in a document that contains otherwise relevant or responsive information."); Beverage Distribs., Inc. v. Miller Brewing Co., Nos. 2:08-CV-827, 2:08-CV-931, 2:08-CV-1112, 2:08-CV-1131, 2:08-CV-1136, 2010 WL 1727640, at *3 (S.D. Ohio, Apr. 28, 2010); Medtronic Sofamor Danek, Inc. v. Michelson, No. 01-2373-GV, 2002 WL 33003691, at *5 (W.D. Tenn. Jan. 30, 2002) ("The Federal Rules of Civil Procedure do not recognize irrelevance as a privilege or an objection that warrants redaction[.]")).

[19] See e.g. Pianko v. General R.V. Ctr., Inc., No. 20-13371, 2022 WL 1086378, at *4 (E.D. Mich. Apr. 11, 2022) (ordering defense counsel to produce the withheld documents or view the documents with plaintiff's counsel to determine their relevance); Tween Brands Inv., LLC v. Bluestar All., LLC, No. 2:15-CV-2663, 2015 WL 6955177, at *2 (S.D. Ohio Nov. 10, 2015) (ordering production of potentially irrelevant documents to avoid one party unilaterally deciding relevancy); Osborn, 2013 WL 12176851, at *2-3 (Non-party subject to a Rule 45 subpoena duces tecum was not allowed to withhold documents containing confidential business information on the basis of relevancy, it was directed to produce the documents with the designation "confidential" in accordance with the parties' stipulated confidentiality order.).

The Court understands that Phoenix has concerns over dissemination of its confidential information concerning other customers who may be competitors of Veritiv. The parties have entered into a Stipulated Confidentiality Order in this case (DN 22). The Court finds little risk of harm if Phoenix produces the emails without redactions and the attached accounts receivable aging reports in their entirety with the "confidential" designation which will impose limits on the parties' use of the documents (Id.).

Relatedly, Veritiv suggests that it should be allowed to conduct additional discovery regarding Phoenix's payment history and terms because Veritiv perceives an inconsistency between the testimony of Mike Grimm, Phoenix's CEO, and Phoenix's answer to Interrogatory No. 2 (Veritiv's Second Set of Interrogatories). On December 7, 2021, Veritiv took the deposition of Mike Grimm, Phoenix's CEO (**SEALED** DN 74-3, Mike Grimm Depo. PageID # 2584). During which Mr. Grimm was asked about the payment terms that Lindenmeyr offered to Phoenix for the Three Z account (**SEALED** Id. at PageID # 2585). He responded that it was the standard payment terms of 1% 20 Net 21 which is used by 90% or 95% of the paper industry (**SEALED** Id. at PageID # 2585). When pressed on what the terms are with every distributor with whom Phoenix works, Mr. Grimm indicated that "the vast majority of them are 20, net 21" but conceded "there may be a handful of them that are – that are 30, net 31" (**SEALED** Id. at PageID # 2586).

On August 1, 2022, Phoenix responded to Interrogatory No. 2 (**SEALED** DN 74-2, Answer to Interrogatory No. 2, Second Set of Interrogatories). Interrogatory No. 2 reads, "[p]lease state the payment terms Phoenix has had with every Merchant since November 1, 2019 to the present" (**SEALED** Id. at PageID # 2577). In pertinent part Phoenix's answer reads, "since December 2021, Phoenix's payment terms for all merchants have been 1% 20 Net 21" (**SEALED** Id.). Phoenix's response also provides a list that identifies the payment terms between Phoenix and each

merchant prior to December 2021 (**SEALED** Id.).   For example, the list indicates prior to December 2021, the payment terms between Phoenix and Lindenmeyr Central was 1% 30 Net 31 (**SEALED** Id.).   As Phoenix answered Interrogatory No. 2 more than seven months after Mr. Grimm testified, and Phoenix has explicitly identified its payment terms for the merchants prior to and since December 2021, that source is true and accurate.   Thus, Veritiv has not demonstrated that it is entitled to conduct additional discovery on this subject.

**WHEREFORE**, Veritiv's motion is **GRANTED** to the extent it seeks to compel Phoenix to supplement its response to **Request No. 7 of Veritiv's Second Set of Requests for Production**, as revised by Veritiv's proposed modifications.   **Within 45 days of entry of this Order**, Phoenix shall produce the subject emails (PPW0000942 – 968, 974, 981, 985, 987-988, 996-997, 1003, 1006, 1011-1012, 1014-1015, 1020, 1023 1027, 1033, 1035-1037, 1043 and 1053) without redactions and with the attached reports in their entirety.

III.   Communications Regarding Protected Accounts

A.   Arguments of the Parties

Veritiv explains that review of Phoenix's initial document production revealed an email string, dated November 9, 2020, which showed Phoenix had communications with other merchants and customers wherein Phoenix notified them it was protecting Veritiv's accounts and not quoting any other merchants or customers as to those accounts (**SEALED** DN 67-1 PageID # 2304-05). To capture additional similar documents from Phoenix, Veritiv propounded Request Nos. 1, 2, 3, 4, 10, and 11 in its Second Set of Requests for Production (**SEALED** Id. at PageID # 2305-07). Phoenix objected to each discovery request as overly broad and unduly burdensome because it was not limited to a relevant time frame and scope, and the list of 112 accounts (Veritiv_0000598-Veritiv_0000600) referenced in each discovery request were Rollsource

accounts, not Veritiv accounts (**SEALED** Id. at PageID # 2305-09).   Veritiv indicates it has clarified that the timeframe is April 2020 to December 2021, which is relevant because it includes when the parties discussed and reached agreement on Veritiv's accounts to be protected and it ends a month and a half after Phoenix's decision to terminate the Protected Accounts Agreement (**SEALED** Id.).   Veritiv asserts that these discovery requests are relevant to its claim that as of July 2020, Phoenix agreed to protect certain accounts that Veritiv brought to it by declining to quote sales of paper to those accounts through competing merchants (**SEALED** Id.).   Further, Veritiv points out that Phoenix understood that Rollsource was a division of Veritiv in 2020 and until to its sale to Pixelle in the first quarter of 2021 (**SEALED** Id.) (citing **SEALED** DN 34-08, November 2020 email string).   Further, Phoenix communications regarding the Rollsource Protected Accounts would either substantiate or impeach Tom Umenhofer's testimony concerning what Phoenix meant by protection for Veritiv (**SEALED** Id.).   Finally, Veritiv posits that Phoenix has not substantiated its general assertion that the requests are not proportional to the needs of the case (**SEALED** Id.).

In response, Phoenix argues "[t]he Court should deny Veritiv's Motion with regard to Request Nos. 1-4 and 10-11 in Veritiv's Second Set of Discovery because Veritiv has not and cannot establish the relevance of the more than 100 companies subject to this group of discovery demands (**SEALED** DN 70 PageID # 2398).   Phoenix contends that it has already produced a large volume of documents regarding discussion of alleged Veritiv protected accounts in response to Request No. 33 in the First Set of Requests for Production (**SEALED** Id. at PageID # 2399).   Additionally, Phoenix asserts that Veritiv's demand for all communications relating to 112 companies is overly broad, unduly burdensome, and completely unjustified considering Veritiv's inability to establish the communications' relevance (**SEALED** Id. at PageID # 2399-2400).

Phoenix indicates that in correspondence dated August 24, 2022, Veritiv proposed narrowing the scope of each of the Requests but subsequently rescinded its proposal because Veritiv's Motion to Compel only mentions a time limitation of April 2020 to December 2021 (**SEALED** Id. at PageID # 2400). Further, Phoenix points out that documents Veritiv has produced through discovery indicate the vast majority of the companies identified in Veritiv's discovery requests do not meet Veritiv's own criteria for a "protected account" based on sales through June 2022 (**SEALED** Id. at PageID # 2401).

Turning to the substance of Phoenix's opposition, it argues that communications with other vendors that might show a Phoenix sales representative declined to quote another distributor on an account typically sold through Veritiv would not demonstrate the existence of a protected account agreement whereby Phoenix was contractually prohibited from quoting another distributor for that account (**SEALED** Id. at PageID # 2401-02). Phoenix posits that it might have many reasons for quoting only a single distributor on a given account, such as staying with one vendor because they had a good relationship (**SEALED** Id.). Phoenix argues that any decision it made to quote only a single distributor for a particular end customer does not prove that the account was protected in an exclusive manner as Veritiv advocates (**SEALED** Id.). Moreover, Phoenix contends that Veritiv incorrectly characterizes the issue to be resolved as whether the term "protected account" means either that Veritiv had an exclusive right of sales to the customer or whether it means Phoenix would not undercut it on pricing for that customer, because this assumes Phoenix has committed to a particular definition of the term (**SEALED** Id. at PageID # 2402). Phoenix argues that the testimony of witnesses in the case demonstrates that the term "means different things to different people in the paper industry" and that there was never any meeting of the minds for form an agreement on the meaning of this term (**SEALED** Id. at PageID # 2402). Phoenix characterizes

Veritiv's requests as a fishing expedition in that it has already produced documents relating to the alleged protected accounts and protected customers (**SEALED** Id.).

In reply, Veritiv disputes Phoenix's assertion that it already produced a large volume of documents regarding discussion of alleged Veritiv protected accounts in response to Request No. 33 in Veritiv's First Set of Requests (**SEALED** DN 74 PageID # 2564).  Veritiv explains that Phoenix produced only a small number of documents that were responsive to Request No. 33 and, during the meet and confer, Veritiv asked Phoenix to provide the details of how it performed its initial search given Phoenix's failure to produce what Veritiv knows should exist but has yet to receive a response from Phoenix (**SEALED** Id.).  For this reason, Veritiv issued a second set of discovery seeking more directed searches for communications related to protected accounts (**SEALED** Id.).  Communications related to these accounts are crucial to establishing that Veritiv and Phoenix had a meeting of the minds concerning what accounts were protected, when the protected accounts agreement began, and that Veritiv and Phoenix understood protecting an account meant not selling that account through a competing merchant (**SEALED** Id. at PageID # 2564-65).  Further, the existence of purchase orders and inquiries from other merchants and Phoenix's response is relevant to Veritiv's breach of protected accounts agreement (**SEALED** Id. at PageID # 2565).  Contrary to Phoenix's assertion, Veritiv has not rescinded its proposals to reduce the scope of these document requests (**SEALED** Id.).  Additionally, Veritiv suggests that the Court should not address Phoenix's remaining arguments that go to the merits of Veritiv's protected accounts agreement claim because Phoenix has not moved to dismiss that claim (**SEALED** Id. at PageID # 2565-66).

B.      Discussion

At issue are Document Request Nos. 1, 2, 3, 4, 10, and 11 in Veritiv's Second Set of

Requests for Production and the written responses of Phoenix (*see* **SEALED** DN 70-1 PageID

# 2475-76, 2479-80, Montion Decl. Ex. L).  Phoenix responded to Request Nos. 1, 2, 10, and 11

as follows:

> This Request is overly broad and unduly burdensome as it is not
> limited to a relevant timeframe and scope.  This Request seeks
> information that is not relevant to any party's claim or defense or
> proportional to the needs of the case.  It is undisputed that the list of
> 112 accounts referenced in this Request is inoperative.  Rollsource,
> the sales leader identified for the majority of the accounts on the list,
> is no longer affiliated with Veritiv.  Veritiv did not include the
> majority of the accounts on this list in its Proposed Preliminary
> Injunction Order when it sought a preliminary injunction in this
> matter, which the Court denied.

(**SEALED** Id. at PageID # 2475, Montion Decl. Ex. L).  Phoenix's response to Request Nos. 3 and

4 reads:

> This Request is overly broad and unduly burdensome as it is not
> limited to a relevant timeframe and scope.  This Request seeks
> information that is not relevant to any party's claim or defense or
> proportional to the needs of the case.  The list of 41 accounts
> referenced in this Request was generated internally by Veritiv and
> includes customers to which Phoenix never sold any paper through
> Veritiv.  The list of 41 accounts referenced appears only in the
> supplemental interrogatory answers and Proposed Preliminary
> Injunction Order that Veritiv drafted in connection with its request
> for a preliminary injunction in this matter, which the Court denied.

(**SEALED** Id. at PageID # 2476, Montion Decl. Ex. L).  In sum, Phoenix objected to all the

Requests on the grounds: (1) they do not seek information that is relevant; and (2) they are overly

broad and unduly burdensome because they are not limited to a relevant timeframe and scope.

In correspondence dated August 24, 2022, Veritiv made proposals that substantially

narrowed the scope of each of the Requests (**SEALED** DN 70-1 PageID # 2498-2501, Montion

Decl. Ex. O).  Specifically, Veritiv proposed: **Request Nos. 1 and 2** be "limited to the time period

of April 2020 to December 2021," and "limited to communications containing the terms 'protected

account,' 'protect' or 'exclusive', **or** to communications where a merchant requested a quote on

any of the accounts or Phoenix responded to a merchant's request to quote one of the accounts;"

**Request Nos. 3 and 4** be reduced to the 17 accounts specified in meet and confer letter; **Request**

**No. 10** be limited to the time period of July 2020 to December 2021; and **Request No. 11** be

reduced to the 17 accounts specified in meet and confer letter and limited to the time period of

January 2021 to December 2021 (**SEALED** Id.).[20]

Phoenix suggests that Veritiv later rescinded the proposal, Veritiv confirms that it has not

rescinded the proposal.  Consequently, the Court understands that the scope of discovery in

question is as designated in Veritiv's compromise proposal and not as originally stated in the

Requests.  This means that Phoenix's objection to the Requests not being limited to a relevant

timeframe and scope, has been resolved by Veritiv's compromise proposal.  Thus, the Court need

only address Phoenix's relevance objection.

Veritiv, as the party moving to compel, bears the initial burden of demonstrating relevance

of the information or materials requested.  *See* Brewer v. All. Coal, LLC, No. 7:20-CV-00041-

DLB-EBA, 2022 WL 5199868, at *2 (E.D. Ky. Oct. 5, 2022); Burrell v. Duhon, No. 5:18-CV-

00141-TBR-LLK, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019).  Rule 26(b)(1) of the

Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged

matter that is relevant to any party's claim or defense and proportional to the needs of the case."

Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b) advisory committee's note to 2015

---

[20] The 17 accounts specified in the correspondence dated August 24, 2022, are the same 17 accounts identified in Veritiv's updated proposed order filed on April 12. 2023 (*compare* **SEALED** DN 70-1 PageID # 2498-2501, Montion Decl. Ex. O *with* **SEALED** DN 79 PageID # 2619).

amendment.[21]   Additionally, the Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

"Relevance is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)).  Additionally, a "variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action."  Fed. Rule Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.  For example, "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."  Fed. Rule Civ. P. 26(b)(1) advisory committee's note to 2000 amendment. Thus, the spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one.  See John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D.N.Y. 2014); Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008).  Further, the Court has wide discretion in deciding whether information might be relevant.  See Albitton, 2016 WL 3580790, at *3.

Veritiv asserts that the Requests seek evidence such as communications, quotes, and purchase orders that will be relevant to the claim in Count I of the Amended Complaint which alleges Phoenix breached the protected accounts agreement.  More specifically, Veritiv believes the requested documents will help establish that Veritiv and Phoenix had a meeting of the minds concerning what accounts were protected, when the protected accounts agreement began, and that

---

[21] In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1).

Veritiv and Phoenix understood that protecting an account meant not selling paper to the account through a competing merchant.  Veritiv explains the requested documents will also demonstrate that Phoenix breached the agreement with regard to Three Z and the other 16 accounts.  Therefore, Veritiv has adequately demonstrated that Request Nos. 1, 2, 3, 4, 10, and 11 seek evidence that is relevant to its claim in Court I that Phoenix breached the protected accounts agreement.

Phoenix suggests that communications and other document sought by Requests are irrelevant because they are insufficient to demonstrate both the existence of a protected account agreement and that Phoenix breached the agreement.  The Court observes that Phoenix is challenging the sufficiency of the requested evidence to support Veritiv's claim that a protected accounts agreement existed, and Phoenix breached the agreement.  Such an argument is more appropriately raised after Veritiv has conducted fact discovery to develop evidence in support of its claim.  Further, Phoenix's argument fails to appreciate that what Request Nos. 1, 2, 3, 4, 10, and 11 seek is a part of the evidence Veritiv plans to present in support of the claim in Count I.  Moreover, what Veritiv seeks through these Requests "need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Because Veritiv has satisfied the initial burden of demonstrating relevance of the information or materials requested, the burden shifts to Phoenix to show that production of the information or materials would be unduly burdensome.  *See* Delta T, LLC v. Williams, 337 F.R.D. 395, 398 (S.D. Ohio 2021).  As mentioned above, Phoenix's objection to the Requests not being limited to a relevant timeframe and scope, has been resolved by Veritiv's compromise proposal.  To the extent that anything remains of Phoenix's objections, its statements that the Requests are burdensome is not adequate to voice a successful objection.  *See* Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC, 277 F.R.D. 348, 360 (W.D. Ky. 2011).   Phoenix must demonstrate

specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden. *See* Id.; Waskul v. Washtenaw Cnty. Cmty. Mental Health, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021); Cratty v. City of Wyandotte, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017). Thus, to the extent that anything remains of Phoenix's objections, it has not satisfied its burden of showing the Requests are unduly burdensome.

**WHEREFORE**, Plaintiff's motion is **GRANTED** to the extent it seeks to compel Phoenix to supplement its response to **Request Nos. 1, 2, 3, 4, 10, and 11 of Veritiv's Second Set of Requests for Production**, as revised by Veritiv's proposed modifications in correspondence dated August 24, 2022 (see **SEALED** DN 70-1 PageID # 2498-2501, Montion Decl. Ex. O).[22] **Within 90 days of entry of this Order**, Phoenix shall produce the requested materials.

IV.    Payment History of Lindenmeyer and Other Merchants

A.    Arguments of the Parties

At issue are two discovery requests in Veritiv's Second Set of Requests for Production (**SEALED** DN 67-1 PageID # 2309-10). Specifically, Request No. 9 seeks "documents sufficient to show the payment history between Lindenmeyer and Phoenix[;]" and Request No. 22 seeks "documents sufficient show Phoenix's accounts receivables for January 1, 2020 to the present" (**SEALED** Id. at PageID # 2309-10) (**SEALED** DN 70-1 PageID # 2478-79, 2483, Montion Decl. Ex. L). Phoenix's response to Request No. 9 reads:

---

[22] Specifically, **Request Nos. 1 and 2** are "limited to the time period of April 2020 to December 2021," and "limited to communications containing the terms 'protected account,' 'protect' or 'exclusive', **or** to communications where a merchant requested a quote on any of the accounts or Phoenix responded to a merchant's request to quote one of the accounts;" **Request Nos. 3 and 4** are limited to the following 17 accounts: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope; **Request No. 10** is limited to the time period of July 2020 to December 2021; and **Request No. 11** is limited to above identified 17 accounts and the time period of January 2021 to December 2021 (**SEALED** DN 70-1 PageID # 2498-2501, Montion Decl. Ex. O).

> **Objection.** This Request is overly broad as it is not limited to a relevant scope and seeks documents that are not relevant to any party's claim or defense or proportional to the needs of the case. Subject to and without waiving the foregoing objections, Phoenix has already produced documents relating to its sales to Lindenmeyr for delivery to Three Z.

(**SEALED** DN 70-1 PageID # 2479, Montion Decl. Ex. L).  Phoenix's response to Request No. 22 reads:

> **Objection.** This Request seeks sensitive financial information that is not relevant to any party's claim or defense or proportional to the needs of the case.

(**SEALED** Id. at PageID # 2483).

Veritiv points out that these Requests seek documents that are relevant to its claim against Phoenix for tortious interference with Veritiv's contractual relationship with Three Z which arises out of Phoenix's diversion of the Three Z account to Lindenmeyr (**SEALED** Id. at PageID # 2309).  Also, Phoenix's counterclaim asserts that it was entitled to divert the Three Z account to Lindenmeyer to protect Phoenix's own economic and business interests because Veritiv, unlike Lindenmeyr and other merchants, was late paying Phoenix (**SEALED** Id.).  Veritiv claims that these requests seek documents reflecting Lindenmeyr's payment history to test the veracity of Phoenix's position (**SEALED** Id. at PageID # 2310).  Veritiv explains that Phoenix may produce documents which may refute this counterclaim (**SEALED** Id. at PageID # 2310-11).

In response, Phoenix begins its opposition to the Requests by suggesting that whether it made a good business decision—choosing to work with Lindenmeyr instead of Veritiv to sell its paper to Three Z—is wholly irrelevant to the claims and defenses in this action because Phoenix did not owe any contractual or other legal duty to Veritiv to refrain from selling paper to any merchant representative or customer that Phoenix choses (**SEALED** DN 70 PageID # 2396-98).  For this reason, documents relating to the payment history of Phoenix's other merchant

representatives and customers are not relevant to Phoenix's counterclaim for breach of contract based on Veritiv's failure to adhere to the payment terms applicable to the purchase orders between Veritiv and Phoenix (**SEALED** Id.) (citing United Propane Gas v. Pincelli & Assocs., No. 5:13-CV-00190, 2016 WL 9583871, at *4-6 (W.D. Ky. Dec. 29, 2016) (Rejecting argument that contracts relating to other buyers were relevant because they would establish defendant's procedure for contract formation generally.)).  Further, Phoenix contends that Veritiv's reliance on L. K. Comstock & Co. v. Becon Constr. Co., 932 F. Supp 948 (E.D. Ky. 1993) and Southern Cal. Gas Co. v. Syntellect, Inc., No. 08-CV-941-BEN, 2009 WL 10725725 (S.D. Cal. Dec. 15, 2009) is misplaced because the payment history of Phoenix's other business partners is not relevant to interpretation of the purchase orders between Phoenix and Veritiv (**SEALED** Id.).  Phoenix also asserts that its answer to Interrogatory No. 2 provided the payment terms with other merchants (**SEALED** Id.).

Veritiv points out that contrary to Phoenix's contention, under the law of Kentucky Veritiv's tortious interference claim is not predicated on the viability of its breach of the protected accounts agreement (**SEALED** DN 74 PageID # 2562-63) (citing Ventas, Inc. v. Health Care Prop. Invs., Inc., 635 F. Supp. 2d 612, 621 (W.D. Ky. 2009) aff'd sub nom. Ventas, Inc. v. HCP, Inc., 647 F.3d 291 (6th Cir. 2011)).  Veritiv asserts that the payment history of Lindenmeyr and other merchants is relevant both to its tortious interference claim and Phoenix's defense that it had a legitimate business interest in requesting Three Z transfer its business to Lindenmeyr because Veritiv was a slow paying merchant (**SEALED** Id. at PageID # 2563-64).

B.     Discussion

Veritiv, as the party moving to compel, bears the initial burden of demonstrating relevance of the information or materials requested.  See Brewer v. Alliance Coal, LLC, No. 7:20-CV-00041-

DLB-EBA, 2022 WL 5199868, at *2 (E.D. Ky. Oct. 5, 2022); Burrell v. Duhon, No. 5:18-CV-00141-TBR-LLK, 2019 WL 5260481, at *2 (W.D. Ky. Oct. 17, 2019).  Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.[23]   Additionally, the Rule also directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ.P. 26(b)(1).

"Relevance is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)).  Additionally, a "variety of types of information not directly pertinent to the incident in suit could be relevant to the claims or defenses raised in a given action."  Fed. Rule Civ. P. 26(b)(1) advisory committee's note to 2000 amendment.  For example, "information that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable."  Fed. Rule Civ. P. 26(b)(1) advisory committee's note to 2000 amendment. Thus, the spirit and purpose of the Federal Rules of Civil Procedure demonstrate that the relevance threshold is a relatively low one.  *See* John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D. N.Y. 2014); Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d

---

[23] In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit."  Fed. R. Civ. P. 26(b)(1) advisory committee's note to 2015 amendment.

1273, 1278 (S.D. Fla. 2008).   Further, the Court has wide discretion in deciding whether information might be relevant.  *See* Albitton, 2016 WL 3580790, at *3.

Veritiv has satisfied its initial burden of demonstrating relevance of the materials sought in Request Nos. 9 and 22.  Veritiv has met its burden by showing the requested materials are relevant to its tortious interference claim and Phoenix's defense as elaborated in the paragraphs above. More specifically, the requested materials will either substantiate or undermine Veritiv's claim and Phoenix's defense by definitively answering the underlying question of whether Lindenmeyer and the other merchants were consistently paying Phoenix in a timely manner.

The burden now shifts to Phoenix to show that production of the information or materials would be unduly burdensome or not proportional to the needs of the case.  *See* Delta T, LLC v. Williams, 337 F.R.D. 395, 398 (S.D. Ohio 2021).   But Phoenix's mere statements that the discovery requests are burdensome or that they are not proportional to the needs of the case is inadequate to voice a successful objection.  *See* Groupwell Int'l (HK) Ltd. v. Gourmet Exp., LLC, 277 F.R.D. 348, 360 (W.D. Ky. 2011).  Phoenix must demonstrate specifically how each discovery request is burdensome and oppressive by submitting affidavits or offering evidence revealing the nature of the burden.  *See* Id.; Waskul v. Washtenaw Cnty. Cmty. Mental Health, 569 F. Supp. 3d 626, 634 (E.D. Mich. 2021); Cratty v. City of Wyandotte, 296 F. Supp. 3d 854, 859 (E.D. Mich. 2017).  Having failed to do so, Phoenix has not satisfied its burden to show that production of the information or materials would be unduly burdensome or not proportional to the needs of the case.

The Court is sensitive to Phoenix's concerns over dissemination of its confidential information concerning Lindenmeyer and the other merchants who are Veritiv's competitors.  The parties have entered into a Stipulated Confidentiality Order in this case (DN 22).  The Court finds

little risk of harm if Phoenix produces the materials sought in Request Nos. 9 and 22 with the "confidential" designation which will impose limits on the parties' use of the documents (Id.).

**WHEREFORE**, Veritiv's motion is **GRANTED** to the extent it seeks to compel Phoenix to supplement its response to **Request Nos. 9 and 22 of Veritiv's Second Set of Requests for Production**, as revised by Veritiv's proposed modifications.  **Within 45 days of entry of this Order**, Phoenix shall produce documents showing the payment history between Lindenmeyr and Phoenix, and documents that show Phoenix's accounts receivables for January 1, 2020 to August 1, 2022.

V.     Produce Tom Umenhofer and Cory Bickett for Depositions

A.     Arguments of the Parties

Veritiv asks the Court to compel the continued deposition of Tom Umenhofer, Phoenix's Director of Sales, and the deposition of Cory Bickett, Revenue Accountant for Phoenix (**SEALED** DN 67-1 PageID # 2311).  Veritiv indicates the limited topics for Mr. Umenhofer's continued deposition are: (1) the Distribution Announcement from August 1, 2022; (2) allocation decisions; (3) additional emails Phoenix produced in discovery after Mr. Umenhofer's initial deposition; and, (4) accounts previously sold thru Veritiv that Phoenix has either (a) arranged to sell to directly, (b) arranged to sell through another merchant, or (c) had discussions with regarding selling directly or through a merchant (**SEALED** Id. at PageID # 2293, 2311-13).  Essentially, Veritiv asserts Mr. Umenhofer's testimony is relevant to its tortious interference claims, its breach of the Protected Accounts Agreement, and its damages flowing from Phoenix's breach of the Protected Accounts Agreement (**SEALED** Id. at PageID # 2311-13).

Veritiv also seeks to depose Cory Bickett, identified as a Revenue Accountant for Phoenix (**SEALED** Id. at PageID # 2294, 2313).  Veritiv believes that Mr. Bickett has knowledge

concerning Phoenix's Counterclaim as he sent emails with excel spreadsheets tracking aging accounts receivable to Mr. Umenhofer and others within management of Phoenix (**SEALED** <u>Id.</u>). Veritiv asserts that it only learned of Bickett's involvement in the matter by virtue of the emails Phoenix recently produced in discovery which included spreadsheets tracking aging accounts receivable (**SEALED** <u>Id.</u>).

Phoenix opposes Veritiv's demand to depose Mr. Bickett and to re-depose Mr. Umenhofer (**SEALED** DN 70 PageID # 2402-06). Beginning with Mr. Bickett, Phoenix states that it did not identify him in its initial disclosures as a witness that it may use to support its claims or defenses because, as an accountant, his only involvement has been the preparation of aging accounts receivable reports for Phoenix's management team (**SEALED** <u>Id.</u> at PageID # 2403-04). Those reports, Phoenix argues, facially provide the relevant information and his deposition is unnecessary (**SEALED** <u>Id.</u>).

Turning to Mr. Umenhofer, Phoenix notes that Veritiv has already deposed him and questioned him extensively (**SEALED** <u>Id.</u> at PageID # 2404-06). With regard to the relevance of questioning him about the distribution announcement wherein Phoenix advised its customers that it would no longer do business with Veritiv, Phoenix states that the fact that it terminated its relationship with Veritiv is undisputed and the identities of the customers receiving the notification are irrelevant (**SEALED** <u>Id.</u>). Phoenix notes that the announcement is a mere statement of fact and Veritiv has not asserted any claims of defamation resulting from the announcement (**SEALED** <u>Id.</u>).

Next, Phoenix claims that Mr. Umenhofer's testimony regarding Phoenix's allocation of paper to its distributors bears no relevance to any of the claims which Veritiv has asserted against it (**SEALED** <u>Id.</u>). As to Mr. Umenhofer's knowledge of additional emails produced since his

42

initial deposition, Phoenix points out that Veritiv elected to take his initial deposition before it propounded any written discovery (**SEALED** Id.).  Thereafter, Veritiv had seven months in which to pursue any questions and Phoenix characterizes Veritiv's current request to take another deposition as coming too late (**SEALED** Id.).  Finally, Phoenix argues that Veritiv's request for a deposition identifies topics so broad that it fails to justify the need for the deposition (**SEALED** Id.).

Veritiv acknowledges Phoenix's argument that the deposition of Mr. Bickett should not be permitted because neither party identified him as a fact witness (**SEALED** DN 74 PageID # 2566). Veritiv replies by contending that Phoenix should have identified Mr. Bickett in its initial disclosure because Phoenix knew that Mr. Bickett—having authored emails and spreadsheets tracking Phoenix's aging accounts receivables—was likely to have known discoverable information concerning its Counterclaim (**SEALED** Id.).[24]  Due to this omission by Phoenix, Veritiv claims it did not even know that Mr. Bickett existed until Phoenix produced the emails and spreadsheets he authored on August 1, 2022 (**SEALED** Id.).  Veritiv contends it requested Mr. Bickett's deposition within 18 days of August 1, 2022 (**SEALED** Id.).  To the extent Phoenix claims Mr. Bickett's deposition is unnecessary as Veritiv already deposed a corporate representative, Veritiv observes that the corporate representative deposition notice did not include any topics related to the Counterclaim because Phoenix filed the Counterclaim seven days later on December 14, 2021 (**SEALED** Id. at PageID # 2566-67).

In response to the allegation that Veritiv failed to exhaust extra-judicial remedies as to Mr. Umenhofer's deposition, Veritiv points out that following a meet and confer on September 8, 2022, it provided Phoenix with a list of topics which limited the scope of the deposition (**SEALED** Id.

---

[24] Specifically, Veritiv is referring Phoenix's counterclaim alleging Veritiv repeatedly failed to pay Phoenix in a timely manner, costing Phoenix in excess of $500,000 in purported damages (DN 74 PageID # 2566).

43

at PageID # 2567).  Additionally, on September 12, 2022, the parties discussed the matter with the Court in a telephonic conference, and the Court instructed Veritiv to address Mr. Umenhofer's deposition in its Motion to Compel (**SEALED** Id.).  Veritiv points out that Mr. Umenhofer has only been deposed in connection with the injunction hearing and that during the subsequent scheduling conference, on January 5, 2022, the parties anticipated taking discovery depositions of preliminary injunction hearing witnesses such as Mr. Umenhofer (**SEALED** Id.) (citing DN 32 PageID # 459).  Veritiv seeks to depose Mr. Umenhofer on only documents produced after his deposition, the allocations that Phoenix implemented after his deposition, the aging accounts receivable claim raised after his deposition, and the August 1, 2022, termination letter that Phoenix authored and sent to Veritiv's customers eight months after his deposition (**SEALED** Id.).

B.     Discussion

The undersigned will begin with Mr. Bickett, who is a Revenue Accountant for Phoenix.  On August 1, 2022, Phoenix responded to Veritiv's Request No. 7 (Second Set of Requests for Production) by producing emails sent by Mr. Bickett to Mr. Umenhofer and others within Phoenix's management.  As discussed above, each heavily redacted email details aging accounts receivable and should have included an attached excel spread sheet tracking aging accounts receivable.  As Phoenix did not identify Mr. Bickett in its initial disclosure, his involvement in tracking past due payments first come to light when Phoenix responded to Request No. 7 on August 1, 2022.[25]

---

[25] The scope of the obligation to identify in an initial disclosure applies to "each individual likely to have discoverable information . . . that the disclosing party may use to support its claims or defenses . . ."  *See* Fed. R. Civ. P. 26(a)(1)(A)(i); Fed. R. Civ. P. 26 advisory committee's note to 2000 amendment ("The initial disclosure obligation of subdivisions (a)(1)(A) and (B) has been narrowed to identification of witnesses and documents that the disclosing party may use to support its claims or defenses.").  Certainly, Mr. Bickett is an "individual likely to have discoverable information" due to his generating and circulating aging accounts receivable reports to Phoenix's management team.  However, due to this accountant's limited role relating to Veritiv, Phoenix did not view Mr. Bickett as someone it "may use to support its claims or defenses."  *See* Fed. R. Civ. P. 26(a)(1)(A)(i).

On August 19, 2022, Veritiv conducted the deposition of Lara Snowaert, a planning and scheduling manager for Phoenix, who received many of the emails sent by Mr. Bickett (**SEALED** DN 67-1 PageID # 2291-92).  During Ms. Snowaert's deposition, Veritiv learned that several of the emails that Phoenix produced on August 1, 2022, were missing attachments detailing aging invoices between Phoenix and Veritv (**SEALED** Id.).  As Ms. Snowaert lacked knowledge about the emails and attachments, at the end of her deposition Veritiv requested dates to depose Mr. Bickett (**SEALED** Id. at PageID # 2292).  Additionally, Veritiv sent a follow up email on August 24, 2022, suggesting a Zoom deposition of Mr. Bickett on Monday, August 29, 2022, to complete the deposition before the Tuesday, August 30, 2022, fact discovery cutoff (**SEALED** 67-8 PageID # 2354).  Considering the circumstances Veritiv has shown diligence in assessing the need to depose Mr. Bickett and attempting to both schedule and conduct his deposition before the fact discovery deadline passed.

Rule 26(b)(1) of the Federal Rules of Civil Procedure allows parties to "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Civ. P. 26(b) advisory committee's Note to 2015 amendment.[26]  "Relevance is to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense."  Albritton v. CVS Caremark Corp., No. 5:13-CV-00218-GNS-LLK, 2016 WL 3580790, at *3 (W.D. Ky. June 28, 2016) (quoting Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978) (citation omitted)).  The spirit and purpose of the Federal Rules of Civil

---

[26] In assessing whether the discovery is "proportional to the needs of the case," courts should consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1); Fed. R. Civ. P. 26(b) advisory committee's note to 2015 amendment.

Procedure demonstrate that the relevance threshold is a relatively low one.  *See* John Wiley & Sons, Inc. v. Book Dog Books, LLC, 298 F.R.D. 184, 186 (S.D. N.Y. 2014); Wrangen v. Pa. Lumbermans Mut. Ins. Co., 593 F. Supp. 2d 1273, 1278 (S.D. Fla. 2008).  Additionally, the Rule directs that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable."  Fed. R. Civ. P. 26(b)(1).

As Mr. Bickett prepared the emails and attached excel spread sheets tracking aging accounts receivable, he should have factual information that is relevant to Phoenix's Counterclaim.  Specifically, the Counterclaim alleges damages in excess of $500,000.00 as a result of Veritiv breaching the purchase order terms of each transaction with Phoenix by chronically failing to pay Phoenix's invoices within 45 days of delivery and yet taking an unwarranted 1% discount which is allowed only for timely payments (**SEALED** DN 25 PageID # 364-65).  Certainly, Mr. Bickett's emails with attached spreadsheets provide information that is relevant to Phoenix's counterclaim and, as explained above, Veritiv's claim of tortious interference with a contractual business relationship and/or expectancy (Count V).  Further, Phoenix indicates that it will be generating an updated accounts receivable report specific to Veritiv which details all past due or late payments that Veritiv owes Phoenix on a transaction-by-transaction basis.  While these documents may be helpful, they are incapable of answering any questions that Veritiv may have regarding the underlying documentation that purportedly substantiates what is set forth in each document.  For these reasons, Veritiv is entitled to question Mr. Bickett concerning his emails and excel spread sheets tracking aging accounts receivable as well as the updated accounts receivable report specific to Veritiv.  In sum, Phoenix must make Mr. Bickett available for the taking of his deposition.

As to Mr. Umenhofer, the Court's Scheduling Order includes the following provision:

> Because the parties engaged in depositions for the purposes of the
> motion for injunctive relief, the Parties request an amendment to

> Fed. R. Civ. P. 30(a)(2) so they each have up to fifteen (15) depositions. Moreover, the Parties have agreed that to the extent a deposition was taken for purposes of the motion for injunctive relief, the continuation of the deposition shall not count as a new deposition for purposes of the deposition limit set forth in Fed. R. Civ. P. 30(a)(2).

(DN 31 PageID # 455; DN 32 PageID # 459). The above provision indicates the parties anticipated that witnesses deposed for the purposes of the motion for injunctive relief would likely be again deposed for the purposes of conducting discovery.

On December 7, 2021, Veritiv deposed Mr. Umenhofer, Phoenix's sales director, in his individual capacity and then as a corporate representative for purposes of the motion for injunctive relief (**SEALED** DN 70-1 PageID # 2409, 2462, Montion Decl. & Ex. J; **SEALED** DN 74 PageID # 2567). Additionally, during the April 28, 2022, preliminary injunction hearing, Veritiv called Mr. Umenhofer on cross examination (**SEALED** DN 70-1 PageID # 2462, Montion Decl. Ex. J). Veritiv has not conducted a discovery deposition of Mr. Umenhofer in his individual capacity. Thus, Veritiv's continuation of Mr. Umenhofer's deposition for the purposes of conducting fact discovery is not imperiled by limit set forth in Rule 30(a)(2).

Phoenix argues Veritiv should not be allowed to take Mr. Umenhofer's deposition because it waited until Friday, August 26, 2022, to notice his deposition for Tuesday, August 30, 2022, the deadline for conducting fact discovery. But Phoenix's argument fails to fully depict the circumstances. In an email dated July 14, 2022, Veritiv expressed its desire to depose Mr. Umenhofer (**SEALED** DN 70-1 PageID # 2463, Montion Decl. Ex. J). In an email dated July 21, 2022, Phoenix objected to Veritiv deposing Mr. Umenhofer unless Veritiv agreed to restrict its questioning to claims and defenses that "were not and could not have been covered in his prior testimony" (**SEALED** Id. at PageID # 2462, Montion Decl. Ex. J). On August 1, 2022, Phoenix issued the Distribution Announcement (the "Announcement") that indicated Phoenix was no

47

longer selling paper through Veritiv to any customer.  On August 11, 2022, during the deposition of a Phoenix employee, Veritiv learned that Mr. Umenhofer was significantly involved in the decision to send out the Announcement and who should receive the Announcement.  In an email, dated August 24, 2022, Veritiv reiterated its desire to schedule and complete the remaining depositions before the discovery cutoff on Tuesday, August 30, 2022 (**SEALED** DN 67-8 PageID # 2354; **SEALED** DN 70-1 PageID # 2496, Montion Decl. Ex. O).  Veritiv's email expressly indicated it wanted to schedule a Zoom deposition of Mr. Umenhofer for Monday, August 29, 2022 (**SEALED** DN 67-8 PageID # 2354; **SEALED** DN 70-1 PageID # 2496, Montion Decl. Ex. O).  In an email dated Friday, August 26, 2022, Veritiv indicated due to the discovery deadline on Tuesday, it was sending out the deposition notice for Mr. Umenhofer and its willingness to schedule the deposition on a different date to accommodate Phoenix (**SEALED** DN 70-1 PageID # 2510-11, Montion Decl. Ex. P).  In an email sent later that afternoon, Phoenix responded that Mr. Umenhofer would not appear for his deposition (**SEALED** DN 70-1 PageID # 2525, Montion Decl. Ex. R).  Considering the circumstances mentioned above, as well as the other substantial discovery disputes the parties were engaged in at the same time, the Court concludes that Veritiv has demonstrated diligence in attempting to schedule and conduct Mr. Umenhofer's deposition prior to the close of fact discovery.

Veritiv seeks to depose Mr. Umenhofer on (1) his involvement in the Announcement and knowledge about entities or individuals who received it; (2) his involvement in the allocation of paper to Veritiv's customers; (3) additional emails Phoenix produced in discovery after Mr. Umenhofer's initial deposition; and, (4) accounts previously sold thru Veritiv that Phoenix has (a) arranged to sell to directly, (b) arranged to sell through another merchant, or (c) had discussions

with regarding selling directly or through a merchant (**SEALED** DN 67-1 PageID # 2293, 2311-13).  The Court will begin with the Announcement.

Concerning the Announcement, Veritiv has demonstrated that examining Mr. Umenhofer about his involvement in the Announcement and his knowledge about the entities or individuals who received it may lead to the discovery of information relevant to Veritiv's claim of tortious interference with a contractual business relationship and/or expectancy (Count V) and its damages flowing from Phoenix's breach of the Protected Accounts Agreement.  Thus, Veritiv should be allowed to depose Mr. Umenhofer on this topic.

Relatedly, there is the question of deposing Mr. Umenhofer about his involvement in the allocation of paper to Veritiv's customers.  By way of background, Phoenix announced its decision to close its warehouse near Scranton, Pennsylvania on January 7, 2022 (**SEALED** DN 70-1 PageID # 2410, Montion Decl.).  In the same month, "Phoenix advised Veritiv that the paper available for purchase by customer would be allocated by Phoenix on a monthly basis" (**SEALED** Id.).  In the months that followed, Phoenix represented to Veritiv that its reductions in the amount of paper allocated to Veritiv's customers were due to benign causes such as production at the plant being behind schedule due to the tornado that struck Western Kentucky on December 10, 2021 (**SEALED** DN 67-1 PageID # 2290).  Veritiv indicates that during the summer of 2022, Phoenix's decisions concerning the reductions in the amount of paper allocated to Veritiv's customers began having a distressing toll on Veritiv's relationship with its customers (**SEALED** Id.).  For example, in June 2022, Phoenix's reduction in the amount of paper allocated to Allied Envelop went from the normal six to eight trucks of paper to zero trucks (**SEALED** Id.).  Additionally, on August 1, 2022, Phoenix issued its devastating Announcement that Phoenix was no longer selling paper through Veritiv to any customer (**SEALED** Id.).  Veritiv advises that emails produced through

49

discovery indicate Mr. Umenhofer communicated with his sales team about allocations of paper to Veritiv customers.  Again, Veritiv has demonstrated that deposing Mr. Umenhofer about his involvement in the allocation of paper from January 2022 through Friday, July 29, 2022, may lead to the discovery of information relevant to Veritiv's claim of tortious interference with a contractual business relationship and/or expectancy (Count V) and its damages flowing from Phoenix's breach of the Protected Accounts Agreement.

Next Veritiv seeks to depose Mr. Umenhofer about certain emails produced by either party in discovery since his initial deposition on December 7, 2021.[27]  More specifically, Veritiv seeks to question Mr. Umenhofer about emails with his sales team concerning Veritiv's protected accounts and allocations of paper to Veritiv's customers.  Veritiv has demonstrated that these emails are relevant to its claim of tortious interference with a contractual business relationship and/or expectancy (Count V) and damages flowing from Phoenix's breach of the Protected Accounts Agreement.

Veritiv also seeks to depose Mr. Umenhofer about Veritiv's customers that Phoenix has either arranged to sell to directly, arranged to sell through another merchant, or had discussions with regarding selling directly or through a merchant.  Veritiv has demonstrated that these topics are relevant to its claims of breach of the protected accounts agreement (Count I) and tortious interference with a contractual business relationship and/or expectancy (Count V).

Finally, Veritiv noticed the Zoom depositions of Messrs. Bickett and Umenhofer for Monday, August 29, 2022.  Phoenix refused to produce Messrs. Bickett and Umenhofer on that date and would not agree to Veritiv's reasonable proposal to schedule the depositions within a few days after discovery closed on Tuesday, August 30, 2022.  Considering the circumstances, the

---

[27] On August 1, 2022, Phoenix responded to the Second Set of Requests for Production that Veritiv propounded on July 1, 2022 (DN 67-1 PageID # 2291).

Court concludes there is no need to amend the fact discovery deadline in the Scheduling Order to accommodate the taking of these depositions.  Instead, the Court will direct that the depositions of Messrs. Bickett and Umenhofer shall be completed within 30 days of entry of this Order.

**WHEREFORE**, Veritiv's motion is **GRANTED** to the extent it seeks an order compelling Phoenix to make Messrs. Bickett and Umenhofer available for the taking of their depositions. **Within 15 days of entry of this Order**, Phoenix **SHALL** provide dates and times for the depositions of Messrs. Bickett and Umenhofer.  **Within 45 days of entry of this Order**, these depositions shall be completed.

VI.    <u>Reopen Discovery</u>

A.    Arguments of the Parties

Phoenix begins by asserting that Veritiv has failed to address, much less justify, its request to re-open fact discovery (**SEALED** DN 70 PageID # 2387-89).  Essentially, Phoenix argues the Court should not modify the scheduling order deadline for conducting fact discovery because, during the more than nine months that fact discovery remained open, Veritiv failed to diligently investigate issues that it had known about for months (**SEALED** <u>Id.</u>) (citing Fed. R. Civ. P. 16(b)(4); <u>Blount v. Stanley Eng'g Fastening</u>, No. 5:19-CV-00109, 2021 WL 932033, at *6–7 (W.D. Ky. Mar. 11, 2021)).  Further, Phoenix accuses Veritiv of seeking to re-depose witnesses to whom it has already had access; demanding production of information and documents that are not discoverable; and prolonging unnecessary discovery disputes to protract this ligation and further harass Phoenix (**SEALED** <u>Id.</u>).

In reply to Phoenix's argument that discovery should not be reopened, Veritiv reminds the Court that during the September 13, 2022, telephonic hearing it declined to consider any requests to reopen discovery until it had ruled on Veritiv's Motion to Compel (**SEALED** DN 74 PageID

# 2567-68).  Veritiv believes good cause exists to modify the Scheduling Order to extend fact discovery pursuant Fed. R. Civ. P. 16(b)(4) and has prepared a memorandum of law to file with the Court once the Court requests Veritiv to do so (**SEALED** Id. at PageID # 2568).  Veritiv believes the Court should not permit Phoenix to bypass its instructions and circumvent Veritiv's ability to argue to the Court why good cause exists for modifying the Scheduling Order (**SEALED** Id.).  Nevertheless, Veritiv explains why given the circumstances it has acted diligently in its attempts to issue discovery requests, resolve insufficient responses or objections to those requests, and depose witnesses within the deadlines (**SEALED** Id.).  Additionally, Veritiv explains why it has been diligent in attempting to take the depositions of Messers. Umenhofer and Bickett (**SEALED** Id. at PageId # 2568-69).

B.      Discussion

The undersigned has communicated with Magistrate Judge King who conducted the telephonic hearing on September 13, 2022.  Magistrate Judge King indicated to the parties that he would not consider any requests to reopen discovery until it had ruled on Veritiv's Motion to Compel.  This is a sound approach given the circumstances of the case.

**WHEREFORE**, after Phoenix complies with the directives in the order below and the depositions of Messrs. Bickett and Umenhofer are completed, the undersigned will conduct a telephonic conference with the parties to address amendments to the Scheduling Order deadlines.

## ORDER

**IT IS HEREBY ORDERED** that Veritiv's Motion to Compel (DN 67) is **GRANTED**.

**IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, Phoenix shall supplement its response to **Request No. 1 of Veritiv's Third Set of Requests for Production**, as

revised by Veritiv's proposed modifications, by producing its profit and loss statements and the audited and unaudited financial statements for 2020-2022.

**IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, Phoenix shall supplement its response to **Request No. 2 of Veritiv's Third Set of Requests for Production**, as revised by Veritiv's proposed modifications, by producing documents showing gross and net revenues for 2020-2022 derived from its paper sales to the following 17 accounts: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope.

**IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, Phoenix shall supplement its responses to **Interrogatory Nos. 5 and 6 of Veritiv's Second Set of Interrogatories and Request Nos. 1, 2, and 4 of Veritiv's Third Set of Requests for Production**, by producing the requested financial information and documents the scope of which is limited to the time frame 2020 through 2022, and as to **Request Nos. 2 and 4** the scope is further limited to the following 17 accounts: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope.

**IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, Phoenix shall supplement its response to **Request No. 7 of Veritiv's Second Set of Requests for Production**,

by producing the subject emails (PPW0000942 – 968, 974, 981, 985, 987-988, 996-997, 1003, 1006, 1011-1012, 1014-1015, 1020, 1023 1027, 1033, 1035-1037, 1043 and 1053) without redactions and with the attached reports in their entirety.

      **IT IS FURTHER ORDERED** that **within 90 days of entry of this Order**, Phoenix shall produce the materials sought in **Request Nos. 1, 2, 3, 4, 10, and 11 of Veritiv's Second Set of Requests for Production**, as modified by Veritiv's proposed modifications in correspondence dated August 24, 2022 (see **SEALED** DN 70-1 PageID # 2498-2501, Montion Decl. Ex. O).  More specifically, **Request Nos. 1 and 2** are "limited to the time period of April 2020 to December 2021," and "limited to communications containing the terms 'protected account,' 'protect' or 'exclusive', **or** to communications where a merchant requested a quote on any of the accounts or Phoenix responded to a merchant's request to quote one of the accounts;" **Request Nos. 3 and 4** are limited to the following 17 accounts: National Mail Graphics, Bradley Graphic Solutions, Rainbow, Navistar Direct Marketing, Image Direct Group, Allied Envelope, Specialty Promotions, Diamond Graphics, McAdams Graphics, Print Management Group, Paul S. Amidon and Associates, Straightline Direct Marketing, Segerdahl Corp d/b/a SG360., MDI Imaging & Mail, Consolidated Mail Services, Cenveo, and Forest Envelope; **Request No. 10** is limited to the time period of July 2020 to December 2021; and **Request No. 11** is limited to the above identified 17 accounts and the time period of January 2021 to December 2021 (**SEALED** Id.).

      **IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, Phoenix shall supplement its response to **Request Nos. 9 and 22 of Veritiv's Second Set of Requests for Production**, as revised by Veritiv's proposed modifications, by producing documents that show the payment history between Lindenmeyr and Phoenix, and documents that show Phoenix's accounts receivables for January 1, 2020 to August 1, 2022.

**IT IS FURTHER ORDERED** that **within 15 days of entry of this Order**, Phoenix shall provide dates and times for the depositions of Messrs. Bickett and Umenhofer.

**IT IS FURTHER ORDERED** that **within 45 days of entry of this Order**, the depositions of Messrs. Bickett and Umenhofer shall be completed.

**IT IS FURTHER ORDERED** that **within 50 days of entry of this Order**, the parties shall notify the Court that Phoenix has complied with the directives in the Order and the depositions of Messrs. Bickett and Umenhofer are completed.

April 17, 2023

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

Copies to:      Counsel of Record